776 So.2d 604 (2000)
STATE of Louisiana
v.
Dwayne WILLIAMS.
No. 99-KA-2355.
Court of Appeal of Louisiana, Fourth Circuit.
December 13, 2000.
*606 Harry F. Connick, District Attorney, Nicole Brasseaux Barron, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
C. Gary Wainwright, New Orleans, LA, Counsel for Defendant/Appellant.
(Court composed of Judge MIRIAM G. WALTZER, Judge, JAMES F. McKAY and Judge MICHAEL E. KIRBY).
WALTZER, J.

STATEMENT OF CASE
Dwayne Williams was indicted by the Louisiana Grand Jury on 22 May 1997 for the first-degree murder of Sean Thomas, a violation of La. R.S. 14:30, to which he pled not guilty. The trial court denied defendant's motion to suppress his statement and motion to quash the indictment. Following a two-day trial on the merits, on 29 *607 May 1998, a twelve-member jury convicted defendant of manslaughter. The trial judge ordered a pre-sentence investigation, noting that the defendant was a first felony-offender and that the judge wished to review defendant's work history and other factors. On 28 August 1998, the court found this was a crime of violence and sentenced the defendant to forty years in the Department of Corrections with credit for time served. Defendant appeals from the conviction and sentence.
We affirm.

STATEMENT OF FACT
Dr. William Newman performed the autopsy on the victim's body, and concluded the cause of death was a gunshot wound to the head. The shooter delivered the fatal wound while standing a distance of two to three feet from the victim. Although the victim did not die immediately, Dr. Newman was unable to estimate how long he lived after being shot. Test results on various bodily fluids were negative for alcohol and commonly abused drugs.
In the early morning hours of 24 March 1997, Officer Richard Bonnet, Jr. responded to a call of gunfire at a residence on Cambronne Street. As he entered the upstairs apartment, he saw the victim on the bedroom floor bleeding from a head wound. The victim's brother and a friend were attending the victim while awaiting emergency medical assistance. Officer Bonnet noticed several bullet holes in the bathroom and bedroom doors as well as in the walls of the apartment. According to Officer Bonnet's testimony, witnesses at the scene identified the defendant as the shooter, and reported that the victim and the defendant argued shortly before the shooting, after which the defendant left the residence, and returned fifteen or twenty minutes later with an assault rifle. He kicked open the front door, proceeded to the rear bedroom, and shot the victim.
Officer Thomatra Green, NOPD crime technician, photographed and retrieved evidence from the shooting scene. She collected six spent bullet casings from the front room of the residence, two from the kitchen, eleven from the hallway, one bullet jacket near the rear bedroom closet and two spent bulletsone from the rear bedroom mattress and the other from a driveway fifty to seventy-five feet from the scene. The rear bedroom door sustained thirteen bullet holes.
Officer Bryan Winbush, NOPD firearms' examiner, testified that the same weapon, an AK47, fired all the bullets and bullet casings retrieved from the shooting scene.
Officer Walter Powers testified corroborating the testimony given by Officers Bonnet and Green. He explained the floor plan of the apartment in which the shooting occurred, and identified pictures of bullet riddled walls and doors in the apartment.
Assistant District Attorney Craig Famularo testified at trial as he did at the hearing on defendant's motion to suppress statement, that the defendant turned himself in to Famularo approximately two to three days after the shooting. The defendant and Famularo executed a Rights of Arrestee Form, at which time the defendant told Famularo he wanted to talk to an attorney. As the defendant signed the form, he began to cry and told Famularo that he had gotten into an argument with two men, armed himself and shot one of the men. The defendant further stated that he did not mean to kill anyone. Famularo testified that when the defendant surrendered, he bore no apparent injuries, but did say that his back and leg hurt. Under cross-examination, Famularo admitted that he neither recorded nor took notes of his encounter with the defendant because the defendant was not going to make a statement. The defendant just blurted out the information to Famularo.
Ms. Sandra Jackson, a 911 dispatcher, testified that her job entails receiving calls for police assistance, and gleaning enough information from the caller to prepare responding police units to meet the emergency. Ms. Jackson received the 911 call for *608 assistance relative to this shooting incident.
Ms. Donna Thomas testified that on 24 March 1997, she and her seven-month-old child, her mother, her brothers, Roy and Sean, and the defendant all lived at the Cambronne Street address. Early that morning, the defendant came home, changed clothes and walked into the kitchen. He then woke her brother, Roy, and began arguing with him about dirty dishes in the kitchen and the bathtub not being clean. The encounter escalated into a physical confrontation with the defendant hitting Roy in the mouth. The pair took their disagreement outside. However, the victim was awakened by the noise of the fighting, and came to Roy's assistance. When the fight ended, the defendant left and her brothers came inside. Ms. Thomas remained awake tending her child. About twenty to thirty minutes after the fistfight, the defendant returned to the apartment, and kicked open the front door. The victim saw that the defendant was armed, and ran into the bedroom with Roy. As the defendant sprayed Roy's bedroom door with bullets, Ms. Thomas ran outside for help. After the shooting stopped, she went inside and the defendant ran out of the house, telling her that he hoped he had shot both of her brothers. Neither of her brothers was armed at anytime.
Roy Thomas testified corroborating his sister's testimony. He added that after the fistfight, when the defendant returned to the house, the victim ran to Roy's bedroom, and warned him the defendant was armed. As the shooting started, Roy lay on the bedroom floor while the victim hid in the closet. When the shooting stopped, Roy called to the victim, but got no response. Roy found the victim in the closet with a bullet wound to his head.
David Williams, the defendant's brother, testified that he and his brother attended religious services together the night before the victim was killed. David saw his brother the next morning around 8:00 a.m., and noticed that his brother was bruised, his elbows and knees were scraped, his eye was blackened and he had a cut over his eye.
Joey Bove, the defendant's employment supervisor, testified that the defendant was an ideal employee, punctual, reliable and free of alcohol and drugs. Mr. Bove had heard that the defendant was experiencing problems with some people at his home.
Clifford Hawkins, the defendant's cousin, testified that he and the defendant had gone drinking around 11:00 p.m. the night before the shooting. Mr. Hawkins dropped the defendant at his home approximately 5:00 a.m. the morning of the incident. Mr. Hawkins saw the defendant the next day, and could see that he had been badly beaten. He photographed the defendant's injuries. The defendant was bruised, scratched and suffered a black eye.
The defendant's sisters, Ms. Paris Robinson and Ms. Holly Williams, testified that they saw their brother in the morning after the shooting. He had been beaten and was bruised, scratched and had a black eye. Ms. Robinson took pictures of the defendant's injuries, but did not bring them to court.
The defendant took the witness stand and related that he, his girlfriend, Donna Thomas, and Donna's child and mother lived at the Cambronne Street address. After about six months of this living arrangement, Donna's brothers, Roy and Sean, moved in with them.
The night before the shooting, the defendant attended religious services with his family. Later that evening, he met his cousin, Clifford Hawkins, and the pair barhopped until almost daybreak. He returned home about 5:00 a.m. to find Roy Thomas doing drugs in the bathroom. He and Roy had had discussions about Roy using drugs in the house. The defendant knocked on the bathroom door to use the facilities. Roy exited the bathroom and an *609 argument ensued and escalated into a physical confrontation, each punching the other. The victim awoke and hit defendant from behind with a gun. When the defendant fell to the floor, the two men continued to beat and kick him. Roy then ran out of the house, and the defendant wrested the gun from the victim, who ran into the bedroom. The defendant fired the gun once but it fired several times into the bedroom door. He said he was just trying to scare the victim so he could escape. The defendant knew that the victim kept a gun in the house, and feared that the victim would shoot him. After the defendant fired the gun, he dropped it in the house, and ran around the corner to tell his sisters what happened. He asked one of his sisters to go to his girlfriend's house to see what happened. His sister told him the victim had been killed. The defendant said he did not intend to kill anyone. He denied ever having been in trouble with the law, having "done" drugs or having carried a weapon.

ERRORS PATENT
A review for errors patent on the face of the record reveals none.

FIRST ASSIGNMENT OF ERROR: The court erred in allowing an Assistant District Attorney to testify as to an inculpatory statement made by the defendant without first establishing that the statement was freely and voluntarily given.
As a matter of due process, before the State may introduce an inculpatory statement into evidence, it must prove that the statement was free and voluntary and not, by contrast, a product of fear, duress, intimidation, menace, threats, inducements or promises. La. R.S. 15:451; State in Interest of J.M., 99-1271 (La.App. 4 Cir. 6/30/99), 743 So.2d 228. A court must look to the totality of the circumstances surrounding the making of the statement to determine its voluntariness. State v. Lavalais, 95-0320 p. 6 (La.11/25/96), 685 So.2d 1048, 1053, cert. denied sub nom Lavalais v. Louisiana, 522 U.S. 825, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997).
In its case in chief, the State called Assistant District Attorney Craig Famularo who testified that the defendant turned himself in to Famularo shortly after the incident. The State asked Famularo about his meeting with the defendant:
Q. When you talked to Mr. Williams, did he say anything to you, did he give you a statement?
A. No. He didn't. He said he wanted to talk to his lawyer and we filled out a Rights of Arrestee Form. He signed it, I signed it. As he was signing the form he started crying. He said he didn't mean to kill anybody and that was pretty much it. He didn't make he said he was in an argument with two guys, he got a gun, came back and shot the guys or shot at the house.
At the outset, we note that defense counsel did not object at any time to Famularo's testimony. La.C.Cr.P. art. 841 requires that objections be lodged contemporaneously with the alleged error at trial. If no objection is made, thereby affording the court an opportunity to cure the alleged defect, the defendant waives the alleged error. La.C.Cr.P. art. 841; State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, cert. denied sub nom. Taylor v. Louisiana, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996).
Nevertheless, under Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), once the accused has invoked his general right to counsel during custodial interrogation, the interrogation must stop. If the police continue to question the defendant, any responses he makes may not be admitted. The right to counsel, once invoked, is not deemed waived unless the defendant himself initiates further discussions with the police. See, Smith v. Illinois, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984).
Even had defense counsel lodged a contemporaneous objection, the court did not err in allowing testimony concerning *610 the statement. Famularo testified that the defendant volunteered the inculpatory statement after having decided that he wanted counsel, and after having completed the Rights of Arrestee form. Albeit inculpatory, the statement was spontaneous, voluntary and not the result of interrogation or other compelling influences.
Once the defendant said he wanted counsel present, interrogation ceased. The defendant waived his previously invoked right to counsel by blurting out the inculpatory statement. Moreover, under direct examination, the defendant confirmed Famularo's account of the circumstances under which the statement was made and its content.
Even were we to hold that the trial court erred in allowing evidence of the defendant's statement, we would be compelled to find the error to be harmless, because the defendant is unable to demonstrate any prejudice. The defendant testified at trial admitting, that he shot the victim. The victim's sister and brother witnessed the incident, and told the court the defendant killed the victim. In light of the overwhelming weight of the evidence of the defendant's guilt coupled with the jury's having convicted the defendant of the lesser-included offense of manslaughter, it does not appear that excluding evidence of the statement would have produced a different result.

SECOND ASSIGNMENT OF ERROR: The trial court impermissibly allowed the prosecutor to question defendant about his prior arrests.
During direction examination defense counsel elicited testimony from the defendant that he had never been in trouble with the law and had no felony arrests.
On cross-examination the prosecutor questioned the defendant about a 1987 arrest for simple burglary and arrests for battery and criminal trespass in 1990, as well as a 1993 arrest for resisting an officer. Defense counsel objected, the trial judge overruled the objection and the defendant answered that he did not remember the arrests.
At trial the State cited no jurisprudence or statutory law for the introduction of the evidence of the prior arrest. The only justification offered for its admission was that defense counsel had "opened the door."
Under La.C.E. Art. 404(B)(1), "evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he [or she] acted in conformity therewith." Exceptions to this rule exist when the evidence of other crimes is used to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the" offense. Id. In addition, "[p]articular acts, vices, or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness." La.C.E. Art. 608(B). This paragraph prohibits cross-examination of a witness as to specific instances of his or her conduct. Comment (b) to La.C.E. Art. 608(B). Evidence regarding previous arrests, indictments, prosecutions or other criminal proceedings not resulting in convictions is prohibited. La. C.E. art. 609.1(B); State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94.
It appears the trial court erred in allowing the State to question the defendant concerning his arrests.
However, in State v. Mitchell, 94-521 (La.App. 3 Cir. 11/2/94), 649 So.2d 569, 571, the defendant testified that he had never sold, used, nor exchanged cocaine for sex; however, the defendant had given a statement to the police at the time of his arrest, denying he had sold cocaine, but admitting he had exchanged cocaine for sex. On cross-examination by the prosecutor, the defendant was asked about his prior statement to the police, which was inconsistent with his trial testimony. The court upheld the admission of the evidence *611 since there was an independent basis for relevancy, that being impeachment. The court also found that the limitation of La. C.E. art. 608(B), prohibiting inquiry into or proving particular acts, vices, or courses of conduct of a witness for the purpose of attacking his character for truthfulness, other than conviction of a crime, was inapplicable because the defendant brought up the issue of past drug distribution during his direct examination, and the prosecution then cross examined the defendant on the same issue.
When other crimes evidence is improperly admitted at trial, the erroneous admission is a trial error and is subject to the harmless error analysis on appeal. State v. Johnson, supra. Trial error is harmless where the verdict rendered is surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).
Considering all the facts of this case, particularly the defendant's confession to shooting the victim coupled with the testimony of two eyewitnesses identifying the defendant as the shooter, the jury's verdict in this case was surely not attributable to the error. Sullivan v. Louisiana, supra.

THIRD ASSIGNMENT OF ERROR: Defendant's statutory maximum sentence is constitutionally excessive and disproportionately harsh compared to other sentences for manslaughter for a first offender.
Article 1, Section 20 of the Louisiana Constitution of 1974 provides that "No law shall subject any person ... to cruel, excessive or unusual punishment." A sentence, although within the statutory limits, is constitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless and needless imposition of pain and suffering." State v. Caston, 477 So.2d 868, 871 (La.App. 4 Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La. C. Cr. P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983).
At the sentencing hearing on 28 August 1998, the trial court stated:
The Court for the record, has reviewed the provisions of Article 894.1 of the Code of Criminal Procedure. The Court believes this is an extremely serious offense, and there can be no more serious of an offense than taking the life of another human being. As far as this being an accident or unintentional, the Court doesn't believe that is so, I mean, anytime you shoot nineteen times through a door, obviously, you have the intent to kill whoever is on the other side of the door. So, Mr. Williams, whatever break you got, you got from the Jury in this matter by not finding you guilty of either first or second degree murder where you would have had to do a life sentence, but I'm not inclined to give you any other break.
The Court is going to go along with the recommendation of the Probation and Parole Office and it is going to be the sentence of this court that you serve forty years at hard labor with the Department of Corrections.
Here the trial judge considered the sentencing guidelines under La.C.Cr.P. 894.1 in his reasons for judgment. Obviously, his primary reason for imposing the maximum sentence was the defendant's intent to kill as evidenced by the nineteen bullets he fired upon his victims.
Once adequate compliance with article 894.1 is found, the court may consider whether the sentence is excessive in light of sentences imposed by other courts in similar circumstances. This sentence is not excessive in light of the jurisprudence. See, State v. Bowman, 95-0667 (La.App. 4 Cir. 7/10/96), 677 So.2d 1094, writ denied, 96-2070 (La.1/31/97), 687 So.2d 400 (thirty-three year manslaughter sentence for a *612 sixteen-year-old first offender who drove the car but did not pull the trigger in a drive-by shooting). Moreover, maximum or near maximum sentences for manslaughter convictions have been affirmed in several cases where the defendant had no prior convictions. Cf. State v. Maxie, 594 So.2d 1072 (La.App. 3 Cir.1992), writ denied, 598 So.2d 372 (La.1992); State v. King, 563 So.2d 449 (La.App. 1 Cir.1990), writ denied, 567 So.2d 610 (La.1990).[1]
The trial court has great discretion in sentencing within statutory limits. State v. Trahan, 425 So.2d 1222 (La. 1983). A sentence should not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Washington, 414 So.2d 313 (La.1982). In State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, the Louisiana Supreme Court reimposed the trial court's forty-year manslaughter sentence on a youthful defendant; in that opinion the Supreme Court stated:
On appellate review of sentence, the only relevant question is "`whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.'" [Citations omitted]. For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const. Art. I, § 20, i.e., when it imposes "punishment disproportionate to the offense." [Citation omitted]. Id.

In this case, testimony showed that the defendant instigated the confrontation. He then left the scene, only to return twenty minutes later with an AK47 semi-automatic assault weapon. He proceeded to kick open the front door, and fire nineteen bullets at his terrified, fleeing targets. The defendant's actions endangered the occupants of the house, including a seven-month-old infant and the victim's invalid mother, as well as neighbors. At least one bullet was found on neighboring property, approximately seventy-five feet from the scene. There is no merit to the defendant's claim of excessive sentence.

FOURTH ASSIGNMENT OF ERROR: Defendant's trial counsel was ineffective.
Defendant contends that defense counsel's failure to move for mistrial when the State elicited testimony from the defendant about prior arrests, and counsel's failure to object to the State's introduction of testimony of an inculpatory statement denied him the assistance of counsel guaranteed by the Sixth Amendment.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983).
A defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant *613 if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 686 U.S.at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992).
For the reasons stated in our disposition of defendant's previous assignments of error relating to the evidence of prior arrests and the inculpatory statement, we find no basis for a finding of ineffective assistance of counsel.

CONCLUSION
The defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The maximum sentence at the time these defendants were sentenced was twenty-one years.