850 So.2d 868 (2003)
STATE of Louisiana, Appellee,
v.
Peter Anton SHAW, Appellant.
No. 37,168-KA.
Court of Appeal of Louisiana, Second Circuit.
June 25, 2003.
*870 Louisiana Appellate Project, by James E. Beal, Jonesboro, Indigent Defender Board, by Andrew Jacobs, for Appellant.
James M. Bullers, Schuyler Marvin, District Attorneys, Robert Randall Smith, Dale N. Montgomery, II, Assistant District Attorneys, for Appellee.
Before PEATROSS, DREW, & KOSTELKA (Pro Tempore), JJ.
PEATROSS, J.
Defendant, Peter Anton Shaw, was charged with one count of unauthorized use of a movable valued at over $1,000, in violation of La. R.S. 14:68[1], and with two counts of simple criminal damage to property valued at greater than $500, in violation of La. R.S. 14:56[2]. Defendant was tried by a jury and convicted as charged. Subsequently, the State filed an habitual offender bill of information charging Defendant as a second-felony offender. The trial court found Defendant to be a second-felony offender and sentenced him to serve six years at hard labor on the count of unauthorized use of a movable and three years on each count of simple criminal damage to property. The trial court ordered these sentences to run concurrent with each other, but consecutive with any other sentence Defendant must serve. Defendant now appeals his convictions and sentences. For the reasons stated herein, we affirm.

FACTS
At approximately 2:00 a.m. on Sunday, August 19, 2001, Defendant drove his truck on the property of Mark and Patty Villarreal ("the Villarreals"), in Haughton, *871 Louisiana, where their house was under construction.[3] Defendant stopped his truck at a driveway leading to the garage. Inside the garage was a tool trailer containing equipment, tools and also a new motorcycle, collectively valued at approximately $10,000, according to the State. The driveway had not been completed; however, Defendant was able to get his truck close to the garage because 60 feet of "form works" that stood between the driveway and the garage had been removed, allegedly by Defendant.[4]
It had rained on the preceding Saturday and Defendant's vehicle became stuck in mud that had formed in the driveway. Defendant admitted to pulling up some form works to put under the tires of his vehicle for traction, but he said he did not pull up several feet of form works. When he failed to get his vehicle out of the mud, Defendant decided to use a tractor with a front-end loader, which was sitting on the construction site, to try and pull his vehicle out of the mud. The tractor was owned by Rick McAnn ("McAnn"), a landscape contractor. The key to the tractor was in the tractor ignition and Defendant did use it, but his attempt to get his truck out of the mud failed. Defendant then called a friend, Mike Harris ("Harris"), who came and pulled Defendant's truck out of the mud with a tow truck.
While using the tractor, Defendant ran over several of the form works and damaged most of the carpentry work that had been completed in preparation of pouring the concrete on Monday. The Villarreals had to pay an additional $800 to their builder to repair the damage. Furthermore, while using the tractor, Defendant damaged the tractor when he broke the key in the ignition. McAnn also found that the tractor was "off kilter" because the front end loader/main frame was bent. Over $2,000 in damage was done to the tractor.
The next day, Defendant informed the Villarreals and McAnn that he was the person who caused the damage to their property. McAnn and Defendant, however, disagreed about the damage to the ignition and front end loader/mainframe of the tractor. Defendant claimed that all he thought he damaged on the tractor was the key when it broke in the ignition. He denied that there was any other damage done to the tractor. Defendant later made conflicting statements about whether or not he used the front end loader/mainframe to try to pull his truck out of the mud. Subsequently, he agreed to pay for all the damage that he caused.
Defendant, however, failed to pay for any of the damage he caused to the property of the Villarreals or to the property of McAnn. On November 5, 2001, Defendant was charged by bill of information with the crime of unauthorized use of a movable valued at an amount greater than $1,000. On January 31, 2002, the bill of information was amended to add the charge of two *872 counts of simple criminal property damage amounting to a sum greater than $500.
A jury trial commenced on May 15, 2002. During the course of his opening statement, the prosecutor stated that:
Some time late Saturday night, early Sunday morning, however you'd call it, around 2:00 a.m. or so, an attempt was made to enter that property. On that property was a tool shed. In that tool shed was equipment and tools and other things, $10,000.00 in value or so. And the driveway led straight up to that tool shed. One little problem in that was that driveway was in the process of being constructed. It had concrete form works built up around it. So in other words, you couldn't drive up to it without running over the concrete.
Defendant did not object to this particular statement at the time of the opening argument, but now argues that these were prejudicial remarks because they alluded to an attempted simple burglary for which Defendant was not charged.
At trial, the jury heard testimony from Bobby Ball ("Ball")[5], a witness for the State. Ball testified that someone had pulled up forms which would allow access into the garage area or area where the tool trailer was located. He further testified that "... the form being taken up and moving around, moved around, it had to be done by hand because there was no vehicle involved. Somebody intentionally pulled that form up and moved it around so it would be open." Finally, he testified about the damage that was done to the Villarreals' construction works and he also testified that Defendant admitted to him what he had done on the night of the incident:
District Attorney: What did Mr. Shaw tell you about his use of the tractor?
Mr. Ball: He stated that he came in there with his truck and he got stuck. He went and got on the tractor, started the tractor and tried to use the front end loader to pick up the back of the truck to unstick it. He said when he picked it up the bucket slipped and did some damage to the back of his truck but he could not move the truck with the tractor.
D.A.: Did Mr. Shaw admit to you that he had run over the-some of the concrete forms?
Mr. Ball: Yes, sir, he told me when we walked up there that he did all the damage with his truck.
The State also presented testimony from the Villarreals and McAnn, the victims in this incident. Mr. Villarreal testified that his driveway was set and ready for concrete pouring on Monday, August 20, 2001. He also testified that the form laid for the driveway had been destroyed and he and his wife had to pay an additional $800 to the contractor to repair the damage.
McAnn testified to the damages done to his tractor, including the tractor key being broken off in the ignition, the damage to the ignition and the damage to the front end loader. The estimate of the damages caused to McAnn's tractor was approximately $2,200.
Ball, Mr. Villarreal and McAnn testified that Defendant agreed to meet with them and pay them for the damages. Defendant, however, never met with the victims as promised, nor did he pay for the damages. On the morning he promised to meet with the victims, Defendant drove past the Villarreals' house and never stopped or came back. Defendant claimed he did not pay for the damages because the contractor, Wendell Hammitt ("Hammitt"), *873 was demanding that he pay Hammitt $3,000 for the damages. Defendant did not call Hammitt as a witness to corroborate his story. None of the victims had any contact with Defendant after he failed to meet with them to pay for the damages.
After hearing the testimony of the State's witnesses, Defendant took the stand and first testified that the reason he went to the Villarreals' house was to leave a flyer advertising his business. He later stated, however, that he left a sign, not a flyer at the Villarreals' house. Defendant then testified that, after his truck got stuck in the mud, he removed the sign.
There were also conflicting statements by Defendant regarding the damage to the tractor and his truck. Ball and Mr. Villarreal testified that Defendant admitted to them that he used the tractor and the front end loader to try to get his truck out of the mud. According to Mr. Villarreal, Defendant told him that the twist in his rear bumper and the dent in his quarter panel came from using the front end loader. Defendant later told police, however, that he used the tractor and damaged the switch, but he did not know whether he damaged the loader. During trial, Defendant testified that he drove the tractor, backed it up, the key broke and he never tried to lift the truck. He further testified that no damage was done to his truck.
Furthermore, during trial, Defendant stated that he pulled into the Villarreals' driveway and, when he backed out, the rear of his truck sank and slid to one side in the mud. Defendant's own witness, Harris, testified however, that he had to pull Defendant's truck out of the mud by hooking chains to the front of Defendant's truck because the rear of Defendant's truck was completely stuck in the mud closest to the garage area.[6]
In his closing argument the prosecutor stated:
There were tools and a tool trailer with valuables on the property. Now let's cover this issue the prosecution smokescreen. To S-3, which as you were shown by Ms. Villarreal where he had over in this corner the shed and the form that was moved out and you can see on this picture. There's no tractor tracks or anything. It was what looks like footprints over there.
Defendant did not object to these statements at the time of trial, but now claims that these remarks were prejudicial and that they also alluded to an attempted simple burglary for which Defendant was not charged.
During the rebuttal phase of closing arguments, the prosecutor stated:
The only person that stands to gain from any of this. He stands to gain to walk free for something he did and something he doesn't want to pay for. Not only does he not want to pay for that, he doesn't want to pay for a good lawyer. Andrew Jacob is a good lawyer.
Defense counsel did object to this statement and the trial judge advised the jury that statements and arguments made by the attorneys are not evidence. Counsel did not request a mistrial to these or any of the comments made by the prosecutor.
After Defendant was found guilty and the State filed the habitual offender bill of information charging Defendant as a second-felony *874 offender, the trial judge adjudicated Defendant as a second-felony offender pursuant to La. R.S. 15:529.1, and sentenced him to six years for unauthorized use of a movable and to three years on each count of simple criminal property damage. The trial judge ordered the sentences to run concurrent with each other, but consecutive with any other sentence Defendant must serve. The trial judge further ordered that, in the event Defendant is paroled, he must make restitution to the Villarreals in the amount of $800 and to McAnn in the amount of $2,200.
On October 1, 2002, Defendant filed a motion to reconsider sentence, which was subsequently denied by the trial judge. Defendant now appeals, raising the following assignments of error (verbatim):
1. The evidence is insufficient to convict the defendant of the crimes of simple criminal damage to property.
2. The State made improper remarks during opening and closing arguments which so prejudiced the jury that guilty verdicts were rendered despite a lack of evidence with regard to any intentional criminal damage to property.
3. A sentence of six years at hard labor is excessive for this defendant under these circumstances.

DISCUSSION

Sufficiency of the Evidence
Defendant asserts that, as far as the counts of simple criminal damage to property are concerned, the State failed to argue that Defendant committed any intentional acts and that this is a civil matter.[7] He argues that the State failed to meet its burden of proof.
On the other hand, the State argues that Defendant's intentions the night of the incident were not "civil in nature" and that the jury properly inferred that he intended to commit the crime for which he was charged. The State further argues that Defendant's testimony and intentions were contradicted by several witnesses, including the victims in this case. Also, the State contends that Defendant's ultimate lack of credibility in the eyes of the jury also persuaded them that his intentions at 2:00 a.m. on a Sunday morning were not "civil in nature" as he claimed. The State points out that the jury believed that an honest businessman would have come at a more appropriate time of day to do what Defendant claimed he was there to do in this case.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687, writs denied, 00-3070 (La.10/26/01), 799 So.2d 1150, 01-2087 (La.4/19/02), 813 So.2d 424. This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or re-weigh evidence. State v. *875 Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
Simple criminal damage to property is the intentional damaging of any property of another, without the consent of the owner, and except as provided in La. R.S. 14:55, by any means other than fire or explosion. La. R.S. 14:56(A). State v. Owens, 606 So.2d 876 (La.App. 2d Cir. 1992). To support a conviction for simple criminal damage to property, the state must prove an intentional damaging of another's property. State v. Barnes, 496 So.2d 1056 (La.App. 4th Cir.1986). An essential element of the crime of simple criminal damage to property is that the damage was done without the consent of the owner. La. R.S. 14:56. State v. Perry, 408 So.2d 1358 (La.1982).
Criminal intent may be specific or general.[8] The crime of simple criminal damage to property requires only general criminal intent. See La. R.S. 14:11. La. R.S. 14:11 provides:
The definitions of some crimes require a specific criminal intent, while in others no intent is required. Some crimes consist merely of criminal negligence that produces criminal consequences. However, in the absence of qualifying provisions, the terms "intent" and "intentional" have reference to "general criminal intent." (Emphasis added.)
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Owens, supra, quoting, State v. Huizar, 414 So.2d 741 (La.1982); State v. Dean, 528 So.2d 679 (La.App. 2d Cir.1988). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Owens, supra, quoting State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir. 1986), writ denied, 499 So.2d 83 (La.1987). Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. State v. Anderson, 343 So.2d 135 (La.1976).
In State v. Alessi, 258 La. 753, 247 So.2d 858 (1971), a landlord filed a criminal complaint against former tenants for property damage. The State charged the tenants with simple criminal property damage. The supreme court held that:
The mere fact that the landlord has a civil remedy for recovery for the damage inflicted does not prevent the state from prosecuting an offending tenant for an act which has been declared also to constitute criminal conduct.
The reason why Defendant entered onto the Villarreals' property was disputed at trial. Defendant claimed he stopped by the house to drop off a flyer or put up an advertising sign. The State, through testimony of its witnesses, however, disputed this as the real reason Defendant went by the house.[9] With this conflict in testimony, *876 it was the jury's duty to make the determination as to which witnesses were credible and what actually happened early Sunday morning on August 19, 2001. It was within the jury's province to decide whether or not Defendant intentionally damaged the property of others.
Here, the jury found that the State met its burden of proving that Defendant had the general criminal intent required to be convicted of simple criminal damage to property. By using the tractor to attempt to free his truck from the mud, Defendant "must have adverted to the prescribed criminal consequences as reasonably certain to result from his act." See La. R.S. 14:56. The damage done to the construction works, which were in close proximity to Defendant's truck, was reasonably certain to result from Defendant's intentional use of McAnn's tractor to try to lift his truck out of the mud. Further, damage to the tractor was reasonably certain to result from Defendant's use of the tractor outside its scope of intended use.
Defendant's argument that this is a civil matter does not override the criminal aspects of his actions. The jury found that Defendant intended to damage the property of the Villarreals and McAnn; and, after viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found that the State proved all the essential elements of simple criminal damage of property beyond a reasonable doubt. Defendant's first assignment of error is without merit.

Prosecutorial Remarks to Jury
Defendant also argues that, during opening and closing statements, the prosecutor made improper references to a crime of attempted simple burglary with which he had not been charged. He also accuses the prosecutor of making an attack against his attorney during trial. Defendant claims a mistrial should have been requested by Defendant's trial counsel and granted based on the comments made by the prosecutor. Moreover, he asserts that the trial court did not admonish the jury after his objection to the comments made by the prosecutor during opening and closing arguments. Defendant argues that the remarks by the prosecutor in opening and closing statements alluded to an attempted simple burglary for which he was not charged and prejudiced the jury to render a guilty verdict despite a lack of evidence.
The State argues that the mentioning of the tool trailer and its valuable contents, along with the removal of the forms blocking access to the garage area where the tool trailer was located, was part of res gestae events[10]. Moreover, the State contends that it is not prevented from including the res gestae events in its statements, allowing the jury to conclude that Defendant's actions had been criminal in nature. The State further argues that it made a reference to Defendant's attorney in closing arguments as rebuttal to defense counsel's sympathy argument that Defendant had a "free lawyer" and that Defendant's arguments are not valid. We agree.
First, we find no basis in Defendant's argument concerning a mistrial. La. C. Cr. P. art. 770(2) mandates a mistrial if the prosecutor refers to "[a]nother crime committed or alleged to have been *877 committed by the defendant as to which evidence is not admissible ..."; however, a defendant must object and move for a mistrial after his objection to the prosecutor's statements. The absence of a timely motion for mistrial under La.C.Cr.P. art. 770 constitutes a waiver of the defect. State v. Gatch, 27,701 (La.App.2d Cir.2/28/96), 669 So.2d 676, writ denied, 96-0810 (La.9/20/96), 679 So.2d 429; State v. Shepherd, 566 So.2d 1127 (La.App. 2d Cir.1990); State v. Hookfin, 476 So.2d 481 (La.App. 1st Cir.1985). In reviewing the record in the instant case, we find that Defendant did not make a timely motion for a mistrial after any of the prosecution's statements; and, therefore, this constituted a waiver of his claim of error on appeal.
In addition, we note that, though generally inadmissible, evidence of other crimes, wrongs or acts may be introduced when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. art. 404(B)(1); State v. Coates, 27,287 (La.App.2d Cir.9/27/95), 661 So.2d 571, writ denied, 95-2613 (La.2/28/96), 668 So.2d 365. In such cases, there must be a close connexity between the charged and uncharged conduct to insure that "the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving the immediate context of happenings near in time and place." State v. Colomb, 98-2813 (La.10/1/99), 747 So.2d 1074. The test of integral act evidence simply is not whether the state might somehow structure its case to avoid any mention of the uncharged act or conduct, but whether doing so would deprive its case of narrative momentum and cohesiveness, with power not only to support conclusions, but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. State v. Colomb, supra, quoting from Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). See also, State v. Constantine, 364 So.2d 1011 (La.1978); State v. Lincoln, 34,770 (La.App.2d Cir.6/22/01), 794 So.2d 56.
There are exceptions to the prohibition of reference to other crimes, and included among those are offenses admissible as part of the category formerly known as the "res gestae " and evidence admissible to establish a motive for the commission of the crime charged. State v. McKnight, 539 So.2d 952 (La.App. 2d Cir. 1989), writ denied, 548 So.2d 322 (La. 1989), citing State v. Willis, 510 So.2d 411 (La.App. 2d Cir.1987), writ denied, 534 So.2d 440 (La.1988). In the instant case, the prosecutor's statements regarding the tool shed/trailer, the valuables inside the tool shed/trailer and Defendant's removal of the forms which blocked the entrance to the area where the tool shed/trailer was located were part of the "narrative momentum and cohesiveness" which falls into the res gestae exception of admission of other crimes evidence. His reference to these items is admissible because it is intertwined with the charged offense to such an extent that the prosecutor could not accurately present his case without the reference. The prosecutor's statement about these items was an integral part of the narration of events that occurred on August 19, 2001, and it made a complete fact pattern for the jurors, giving the jury a clearer picture of the events that occurred. It allowed the jurors to draw the inferences necessary to reach an honest verdict and it showed them that Defendant had another reason for being at the Villarreals' house in the early morning hours besides his own self-serving reason of dropping off a flyer or sign. Finally, the prosecutor's statements regarding Defendant's *878 counsel were not prejudicial. Defendant's second assignment of error is without merit.

Defendant's Sentences
Defendant argues that, but for the fact that he was a second-felony offender, his maximum sentence should only have been five years for the unauthorized use of a movable. He emphasizes that even the victims requested that he not receive jail time for his crime, but, instead, they only wanted him to pay them restitution for the damages.
The State argues that Defendant was a second-felony offender, having been previously convicted of two counts of attempted distribution of controlled dangerous substances, and that Defendant's sentence as an habitual offender was proper. In addition, the State argues that, with sentences being run concurrent, a total sentence of six years for all three charges is not excessive.
A trial court has wide discretion to sentence within the statutory limits. State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. Absent a showing of manifest abuse of discretion, a sentence is not set aside as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345; State v. Square, 433 So.2d 104 (La.1983). If the record supports the sentence imposed, the appellate court shall not set aside a sentence for excessiveness. State v. Shipp, 30,562 (La.App.2d Cir.4/8/98), 712 So.2d 230, writ denied, 98-1199 (La.9/25/98), 724 So.2d 775.
Since the sentence imposed for the habitual offender adjudication is prescribed by statute, the trial court's compliance with La. C.Cr.P. art. 894.1 is not required. State v. Gay, 34,371 (La. App.2d Cir.4/4/01), 784 So.2d 714; State v. Owens, 32,642 (La.App.2d Cir.10/27/99), 743 So.2d 890, writ denied, 00-0438 (La.9/29/00), 769 So.2d 553. A sentence violates La. Const. art. 1, § 20, however, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Richardson, 545 So.2d 714 (La.App. 2d Cir.1989).
In the case sub judice, Defendant was sentenced under La. R.S. 15:529.1, the Habitual Offender Law, to six years for unauthorized use of a movable and to three years for each count of simple criminal property damage. Defendant had a previous felony conviction for attempted distribution of amphetamines and/or cocaine. La. R.S. 15:529.1(A)(1)(a) provides:
If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction.
For a conviction of unauthorized use of a movable, La. R.S. 14:68(B) provides, in pertinent part:
Whoever commits the crime of unauthorized use of a movable having a value in excess of one thousand dollars shall be fined not more than five thousand dollars, or imprisoned with or without hard *879 labor for not more than five years, or both.
For a conviction of simple criminal damage to property, La. R.S. 14:56(B) provides, in pertinent part:
Where the damage amounts to five hundred dollars but less than fifty thousand dollars, the offender shall be fined not more than one thousand dollars, or imprisoned, with or without hard labor, for not more than two years, or both.
Defendant's sentences were ordered to run concurrently with each other, but consecutive with any other sentence Defendant must serve. Under La. R.S. 15:529.1, the trial court could have sentenced Defendant to up to ten years for the unauthorized use of a movable and up to four years for each simple criminal property damage charge, for a total of 18 years. The fact that the trial court ran the sentences concurrent yielded a total of six years for Defendant to serve, with the likelihood of early release through parole.
Even though the trial judge did not have to take cognizance of the criteria set forth in La.C.Cr.P. art. 894.1, he did so anyway and found that Defendant was a high risk for recidivism. The trial judge found that there was undue risk that Defendant would commit another crime, that Defendant was on probation when he committed these crimes and that Defendant is in need of correctional treatment that can only be provided by his commitment to an institution. Any lesser sentence, the trial judge concluded, would deprecate the seriousness of the offenses committed.
Considering the criminal background of Defendant and the factual circumstances surrounding the commission of the offenses, we cannot say that the trial judge abused his discretion in imposing the sentences here, which, under the facts and circumstances, are not constitutionally excessive. These sentences imposed are lawful and neither grossly disproportionate to the severity of the offenses, nor shocking to our sense of justice. Defendant's final assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the convictions and sentences of Defendant, Peter Anton Shaw, are affirmed.
AFFIRMED.
NOTES
[1] La. R.S. 14:68(A) provides:

Unauthorized use of a movable is the intentional taking or use of a movable which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices or representations, but without any intention to deprive the other of the movable permanently. The fact that the movable so taken or used may be classified as an immovable, according to the law pertaining to civil matters, is immaterial.
[2] La. R.S. 14:56(A) provides:

Simple criminal damage to property is the intentional damaging of any property of another, without the consent of the owner, and except as provided in R.S. 14:55, by any means other than fire or explosion.
[3] Defendant has stated that he went to the house in order to drop off a flyer advertising his landscaping business. He has also claimed that he put a sign advertising his business on the Villarreals' property, but he took it down the same night he put it up.
[4] On the Friday before the incident, the Villarreals had formed up their driveway in preparation for the concrete which was to be poured on Monday. Forming involves the use of forms for holding in the liquid concrete. The forms had been erected along the sides of the driveway and the dirt had been leveled so that the concrete could be poured. The forms were erected in the area in front of the garage, so by pulling the forms out of the ground, it allowed easy access to the area directly in front of the garage. Whoever removed these forms would have had easy access to get into the garage.
[5] Ball is the father of Mrs. Villarreal.
[6] The State queries that, if Defendant pulled into the driveway as he claims, then how could Harris hook his truck to the front of Defendant's truck to pull him out of the mud. The more likely scenario, according to the State, is that Defendant must have backed into the driveway near the garage area, since the back of his truck was what was stuck in the mud.
[7] Defendant does not challenge the conviction for unauthorized use of a movable valued over $1,000.
[8] Specific criminal intent is that state of mind which exists when the offender actively desires the prescribed criminal consequences to follow his act or failure to act; intent may be inferred from the circumstances, and the presence or absence of specific intent is ultimately to be resolved by the finder of fact. La. R.S. 14:10(1); State v. Fenner, 94-1498 (La.App. 4th Cir.11/16/95), 664 So.2d 1315, writ denied, 95-3001 (La.4/26/96), 672 So.2d 679, referencing, State v. Govan, 593 So.2d 833 (La.App. 4th Cir.1992), writ denied, 600 So.2d 654 (La.1992). General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(2); State v. Fenner, supra.
[9] What Defendant was doing at the house is largely in dispute because of the odd time he chose to visit the house and because no flyer or sign was found on the property.
[10] The res gestae is evidence that is admissible because it is so related and intertwined with the charged offense that the State could not have accurately presented its case without reference to it. State v. Brewington, 601 So.2d 656 (La.1992).