# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05- 405 consolidated with 05-1128

**STATE OF LOUISIANA**

**VERSUS**

**ANTHONY CRAIG PITRE**

************

## APPEAL FROM THE
## FIFTEENTH JUDICIAL DISTRICT COURT,
## PARISH OF LAFAYETTE, NO. 101384,
## HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

************

## MARC T. AMY
## JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy and Glenn B. Gremillion, Judges.

CONVICTION AND SENTENCE AFFIRMED.
MOTION TO WITHDRAW GRANTED.

Michael Harson
District Attorney
Post Office Box 3306
Lafayette, LA   70502-3306
(337) 232-5170
COUNSEL FOR APPELLEE:
       State of Louisiana

G. Paul Marx
Louisiana Appellate Project
Post Office Box 82389
Lafayette, LA   70598
(337) 237-2537
COUNSEL FOR DEFENDANT/APPELLANT:
       Anthony Craig Pitre

AMY, Judge.

On January 15, 2004, the State filed a bill of information charging the defendant, Anthony Craig Pitre, with attempted armed robbery, a violation of La.R.S. 14:27 and La.R.S. 14:64, and unauthorized use of a motor vehicle, a violation of La.R.S. 14:68.4. He filed a motion to suppress his inculpatory statements, which the trial court denied. Following a jury trial, the defendant was convicted of unauthorized use of a motor vehicle, but was acquitted on the charge of attempted armed robbery. He was adjudicated a second felony offender and was sentenced to six years at hard labor, which was ordered to run consecutively to any other sentence. The defendant filed a motion for appeal, which was granted. On appeal, defense counsel seeks to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967). The defendant has filed a *pro se* brief raising several assignments of error. For the following reasons, we affirm and grant the motion to withdraw.

## Factual and Procedural Background

The victim, Gregory Picone, testified that the defendant approached him at a gas station in Lafayette and asked for a ride home. Once in a sparsely populated area, the defendant pulled a knife and demanded Picone's wallet. At that time, Picone jumped out of the truck and the defendant drove off in Picone's truck.

The defendant testified that Picone asked him for drugs and the two rode around in Picone's truck. Picone later found a prostitute and went to a trailer park where Picone gave the defendant permission to use his truck. The defendant, who was driving Picone's truck, was eventually located in Houston, Texas and arrested.

## Discussion

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no errors patent.

*Anders Brief*

Pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967), the defendant's appellate counsel has filed a brief stating he could find no errors on appeal that would support reversal of the defendant's conviction or sentence. Thus, counsel seeks to withdraw. In *State v. Benjamin*, 573 So.2d 528, 531 (La.App. 4 Cir. 1990), the fourth circuit explained the *Anders* analysis:

> When appointed counsel has filed a brief indicating that no non-frivolous issues and no ruling arguably supporting an appeal were found after a conscientious review of the record, *Anders* requires that counsel move to withdraw. This motion will not be acted on until this court performs a thorough independent review of the record after providing the appellant an opportunity to file a brief in his or her own behalf. This court's review of the record will consist of (1) a review of the bill of information or indictment to insure the defendant was properly charged; (2) a review of all minute entries to insure the defendant was present at all crucial stages of the proceedings, the jury composition and verdict were correct and the sentence is legal; (3) a review of all pleadings in the record; (4) a review of the jury sheets; and (5) a review of all transcripts to determine if any ruling provides an arguable basis for appeal. Under C.Cr.P. art. 914.1(D) this Court will order that the appeal record be supplemented with pleadings, minute entries and transcripts when the record filed in this Court is not sufficient to perform this review.

Pursuant to *Anders* and *Benjamin*, this court has performed a thorough review of the record, including pleadings, minute entries, the charging instrument and the transcripts. The bill of information is in proper form; the defendant and his trial counsel were present at all critical stages of the proceedings. The jury composition and verdict were correct and the sentence imposed by the court is legal. In our review

2

of the transcripts contained in the record, we found no rulings which would support an arguable basis for appeal.

Counsel has mentioned several issues of which the defendant has expressed concern, none of which, according to counsel, support reversal of the defendant's conviction or sentence. We have reviewed these issues and we agree.

*Inculpatory Statements*

In his first *pro se* assignment of error, the defendant contends the State failed to prove beyond a reasonable doubt that his statement, obtained by Detective Lori Roberts, was not in violation of his rights guaranteed by the Fifth Amendment to the United States Constitution. In his second *pro se* assignment of error, the defendant contends the State failed to prove beyond a reasonable doubt that the statement obtained by Detective Sonny Stutes was of a free and voluntary nature. He alleges that the trial court used a mistaken analysis. In his fourth *pro se* assignment of error, the defendant contends the trial court abused its discretion when it denied his motion to suppress inculpatory statements because it was not proven beyond a reasonable doubt that the statements were free, voluntary, and not in violation of his constitutional rights. Inasmuch as these three assignments relate to the Motion to Suppress, they will be addressed together.

In *State v. Chesson*, 03-606, p. 7 (La.App. 3 Cir. 10/1/03), 856 So.2d 166, 173, *writ denied*, 03-2913 (La. 2/13/04), 867 So.2d 686, this court held:

> In considering the admissibility of a statement, it is well settled that the State must bear the burden of demonstrating a defendant's knowing and intelligent waiver of his or her privilege against self-incrimination and the right to counsel. *State v. Vigne*, 01-2940 (La.6/21/02), 820 So.2d 533, *quoting*, *Tague v. Louisiana*, 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980). Furthermore, La.R.S. 15:451 specifically states that before a confession can be introduced, "it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." A trial court's determination regarding the

3

admissibility of a statement is to be given great weight and will not be disturbed by a reviewing court unless it is clearly unsupported by the evidence. *Vigne*, 820 So.2d 533.

*Statement to Detective Roberts*

In his Motion to Suppress, the defendant sought to exclude a statement he made to Detective Lori Roberts in Houston. The defendant contends that his testimony along with that of Detective Roberts indicates that he was incoherent and "nodding out" during the time he made the statement to her. The defendant also contends that it was undisputed that he had previously invoked his Fifth Amendment privilege and refused to sign a waiver of rights form. He contends Detective Roberts took advantage of him and continued interrogating him by means of "misleading conversation." The defendant also contends his will was overcome by sleep deprivation which was induced by heavy narcotic and alcohol use as was testified to by himself and Detective Roberts.

At the hearing on the motion to suppress, Detective Roberts testified that she informed the defendant of his rights and the defendant indicated he had nothing to say to her. No waiver of rights form was presented to the defendant. However, Detective Roberts indicated the defendant understood his rights. Detective Roberts later told the defendant what he was being charged with in Louisiana and explained the extradition process. During that time, the defendant told Detective Roberts, "I took that truck, but I didn't use a weapon. I don't know where they got that from, but I didn't have a weapon."

Detective Roberts testified that the defendant appeared upset and looked tired. However, no threats, promises, or force was used to obtain a statement from him.

The defendant testified that between November 11 and 12, he had used a little more than an ounce of crack cocaine, three ecstacy pills, and five zanbars and drank

4

"better than" a fifth of Jack Daniels or Evan Williams. When he was questioned by Detective Roberts, he said he was "dead to the world" and only understood "something about an extradition process." He had no recollection of Detective Roberts reading his rights and testified that he did not knowingly waive his rights. The defendant further testified that he clearly recalled telling Detective Roberts that he did not want to make a statement.

In ruling that the statement made to Detective Roberts was admissible, the trial court stated the following:

> As she began to inform him of the process for extradition, he volunteered the following statement, that he did not use a -- that he took the truck but did not use a weapon.

> There was -- Mr. Pitre then gave testimony to the effect that he, in fact, decided not to give a statement and denied making a statement. There's no question that Mr. Pitre was aware of his rights and exercised those rights with Ms. Roberts not to give a statement, at which time she ceased her interview about the substantive nature of the offense.

> The fact that he volunteered this information to her as she was advising him about the extradition procedure does not render that an involuntary statement, and, therefore, the Court rules that the statement made to Detective Lori Roberts of the Houston Police Department will be admissible.

The defendant may have invoked his right to remain silent; however, Detective Roberts did not violate that right by informing the defendant of what he would be charged with in Louisiana and the extradition process. The defendant waived his right to remain silent when he spontaneously blurted out the inculpatory statement. *See State v. Williams*, 99-2355 (La.App. 4 Cir. 12/13/00), 776 So.2d 604, *writ denied*, 01-1829 (La. 4/12/02), 812 So.2d 667. Additionally, Detective Roberts never testified that the defendant was nodding out or that he was incoherent. She did, however, testify that he was tired. Accordingly, the trial court applied the appropriate standard and its ruling is correct.

5

*Statement to Detective Stutes*

In his Motion to Suppress, the defendant also sought to exclude a statement he made to Detective Sonny Stutes in Lafayette. The defendant contends the trial court denied his motion to suppress without affirmatively proving that his statement to Detective Stutes was not made under the influence of a promise. The defendant contends the State failed to offer any evidence to prove beyond a reasonable doubt that Detective Stutes did not promise him a more lenient misdemeanor charge in exchange for a statement. He further contends the court denied his motion because Detective Stutes was a police officer.

Detective Stutes testified that he read the defendant his rights and the defendant appeared to understand those rights. Additionally, the defendant signed a waiver of rights. The defendant then informed Detective Stutes of the following:

> He advised me that he had recently been diagnosed with HIV and was very upset, and, that night, he observed a white male at a gas station pumping gas, and he approached him, asked him for a ride to his residence, which he said he didn't live anywhere around there, directed him to a trailer park in a fairly remote location.

> And, at that point, he said he hesitated getting out of the vehicle. The -- He said the victim driver of the vehicle, Mr. Picone, was very nervous and had unbuckled his seat belt and had his hand on the door already.

> Mr. Pitre said he put his hand under his shirt and told him to get out. And he said, before he could finish his sentence, the victim left. And he then got into the driver's seat and drove the vehicle to Houston.

Detective Stutes testified that no threats or promises were made to the defendant prior to his statement. Detective Stutes denied the defendant ever stated he wanted to stop the questioning or speak with an attorney.

The defendant testified that, when first questioned by Detective Stutes, he indicated he had nothing to say unless he had an attorney present. According to his testimony, approximately five to eight days later, Detective Stutes again asked him

6

if he was willing to give a statement and promised that if he cooperated, he could guarantee the defendant that he would be charged with a misdemeanor. The defendant then gave a statement to Detective Stutes. The defendant testified that no rights were read to him before he made the incriminating statement and he was not given any documents to sign.

Detective Stutes testified that he did not speak to the defendant twice and he made no promises to the defendant. Additionally, a waiver of rights was signed by the defendant.

After hearing the testimony in this matter, the trial court found the statement made by the defendant to Detective Stutes was admissible, stating the following:

> And I've been back over that testimony, and I realize that Mr. Pitre's version of the facts are in direct contradiction to Detective Stutes'.
>
> However, I note that Detective Stutes did present to us a waiver of rights form that was signed. Mr. Pitre denies that he signed that form. I find it hard to believe that Detective Stutes would have somehow forged a waiver of rights form.
>
> I believe Detective Stutes' testimony was credible. He indicated that he read the rights to Mr. Pitre and that Mr. Pitre then gave a statement in regard to some involvement in this offense.
>
> I understand your argument was, Mr. Register, that some promises were made to Mr. Pitre. However, I find no evidence that undue promises were made by Detective Stutes. And, therefore, I am going to allow in evidence both the statement, as I ruled earlier, that was made in Houston, as well as the statement made here in Lafayette to Detective Stutes.

The trial court made a credibility determination in this matter and, under *Chesson*, 856 So.2d 166, this court finds that it did not abuse its discretion in ruling the defendant's statement to Detective Stutes was admissible.

This assignment of error lacks merit.

7

*Prosecutor's Comments*

In his third *pro se* assignment of error, the defendant contends the prosecutor expressed his personal unsworn opinion to induce the minds of the jury with a false misleading evidentiary theory when he stated that "(1) people on crack [d]o desperate things, that's why he did it (2) petitioner[']s witness and petitioner told a pack of lies, petitioner[']s witness was a liar, which violated petitioner[']s due process rights . . . ." The defendant also alleges that the prosecutor led the jury to believe that witness Darnelle Demoruelle was referring to a certain location when she was actually referring to another and that he failed to correct his theory before the jury retired to deliberate.

Defense counsel failed to object to any comments made by the prosecutor during closing arguments. Accordingly, the defendant did not preserve this issue for review. *See* La.Code Crim.P. art. 841.

*Guilty Verdict*[1]

In his sixth *pro se* assignment of error, the defendant contends he is illegally incarcerated according to La.Code Crim.P. art. 782(A) in that only nine jurors concurred in the guilty verdict when the law requires that ten jurors concur in order to convict a person. The defendant specifically contends nine jurors voted to find him guilty of unauthorized use of a motor vehicle and one voted not guilty.

The court minutes contained in volume one of the appellate record in this matter do in fact state that nine jurors concurred in the verdict of guilty of unauthorized use of a motor vehicle. However, the polling slips were filed with the record in this matter and they reflect that eleven of the twelve jurors concurred in the guilty verdict. Additionally, the minutes of court were amended to reflect eleven

---

[1]Assignment of Error No. 6 is being discussed out of order because in resolving Assignment of Error No. 5, this court refers to all of the issues raised in the defendant's *pro se* brief.

jurors concurred in the verdict, and those minutes were filed with this court in the third supplemental record.

This assignment is without merit.

*Ineffective Assistance of Counsel*

In his fifth *pro se* assignment of error, the defendant contends counsel failed to argue any issues of significance and said the appeal was frivolous then filed an *Anders* brief asking the court to permit him to withdraw as counsel proving constructive denial of counsel, which violates his Sixth Amendment rights.

Under the standard for ineffective assistance of counsel set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), a reviewing court must reverse a conviction if the defendant establishes that counsel's performance was deficient, and he was prejudiced by the deficiency.

Even if appellate counsel's performance has been deficient, the defendant has not been prejudiced as a result. As discussed above, a review of the record fails to disclose any non-frivolous appealable issues. The issues that the defendant raises have no merit.

Accordingly, this assignment is without merit.

*Excessive Sentence*

In his writ application, the defendant asks this court to review the trial court's denial of his Motion to Reconsider Sentence. As the defendant's writ application was consolidated with his appeal, we have treated the writ as a *pro se* assignment of error and have addressed the sentencing issue set forth therein.

The defendant contends his sentence is excessive. He avers the only reason he was adjudicated a habitual offender is because he refused to agree to a plea of twenty-seven years and went to trial. He additionally asserts that he is aware of people who

9

received lesser sentences. Further, he states that he has not been convicted of any crimes of violence nor any drug offense, and is behind in child support payments.

The defendant admitted that he was convicted on October 30, 2003, of simple burglary. Accordingly, he was adjudicated a habitual offender. Pursuant to La.R.S. 15:529.1 and La.R.S. 14:68.4, the defendant could have been sentenced to a term of imprisonment from five to twenty years with or without hard labor. The defendant was sentenced to serve six years at hard labor. In *State v. Wilturner*, 03-719, p. 5 (La.App. 3 Cir. 11/5/03), 858 So.2d 743, 746, this court held:

> The standard of review for Louisiana appellate courts in determining whether a sentence levied upon a particular defendant was excessive is the manifest-abuse-of-discretion standard. *State v. Guzman*, 99-1753 (La.5/16/00), 769 So.2d 1158. A trial judge has considerable latitude in imposing sentences within the constraints provided by law. *State v. Thompson*, 02-0333 (La.4/9/03), 842 So.2d 330. However, in *State v. Marshall*, 94-0461, p. 24 (La.9/5/95), 660 So.2d 819, 829, the Louisiana Supreme Court held that "[a] sentence may violate a defendant's constitutional right against excessive punishment even if it is within the statutory limit," *citing State v. Sepulvado*, 367 So.2d 762 (La.1979). Furthermore, under both United States and Louisiana law, a sentence is unconstitutionally excessive if it "(1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." *Coker v. Georgia*, 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977); *State v. Handy*, 96-2505, p. 1 (La.1/6/97), 686 So.2d 36, 37, *citing State v. Dorthey*, 623 So.2d 1276 (La.1993).

The defendant received one year more than the minimum sentence allowed in this matter. Further, the trial court noted the defendant committed the instant offense two weeks after he had been placed on probation. Therefore, the sentence imposed is not excessive and the trial court properly denied the defendant's Motion to Reconsider Sentence. *See State v. Shaw*, 37,168 (La.App. 2 Cir. 6/25/03), 850 So.2d 868.

This assignment lacks merit.

**DECREE**

For the foregoing reasons, the defendant's conviction and sentence are affirmed.  The motion to withdraw is granted.

**CONVICTION AND SENTENCE AFFIRMED.  MOTION TO WITHDRAW GRANTED.**