# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


**06-324**


**STATE OF LOUISIANA**

**VERSUS**

**LEON D. FUSSELL**


**********

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 69,110
HONORABLE JOHN PHILIP MAUFFRAY, JR., PRESIDING
**********


**SYLVIA R. COOKS**
**JUDGE**


**********


Court composed of Sylvia R. Cooks, Michael G. Sullivan and Glenn B. Gremillion, Judges.

**AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED WITH INSTRUCTIONS.**

**J. Reed Walters, District Attorney**
**Steven P. Kendrick, Assistant District Attorney**
**28th Judicial District**
**P.O. Box 1940**
**Jena, LA**
**(318) 992-8282**
**COUNSEL FOR APPELLEE:**
        **State of Louisiana**

**Mark O. Foster**
**P.O. Box 2057**
**Natchitoches, LA 71457-2057**
**(318) 572-5693**
**COUNSEL FOR DEFENDANT-APPELLANT:**
        **Leon D. Fussell**

**COOKS, Judge.**

Defendant, Leon D. Fussell, was indicted by a grand jury on one count of aggravated rape, in violation of La.R.S. 14:42, and nineteen counts of pornography involving juveniles, in violation of La.R.S. 14:81.1(A)(3). A jury convicted Defendant of aggravated rape and sixteen charges of pornography involving juveniles. Defendant was acquitted of the three remaining pornography charges. On the aggravated rape conviction, Defendant was sentenced to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. On count sixteen of the pornography charges, Defendant received a sentence of ten years at hard labor without the benefit of parole, probation, or suspension of sentence, to run consecutively to the sentence for the rape. For counts four through fifteen and seventeen through nineteen, Defendant was sentenced to serve two years at hard labor on each count without the benefit of parole, to run consecutively to each other and the other two sentences.

Defendant appeals his convictions and sentences, raising numerous claims in one attorney-filed brief and three *pro se* briefs.

### ASSIGNMENT OF ERROR NO. 1

Defendant claims the evidence presented by the State was insufficient to prove he committed aggravated rape and was in possession of pornography involving juveniles with intent to distribute.

At trial, D.H., the mother of the victim, T.H., testified that in the early part of 2002, she, her husband, P.H., and their children moved to a new house in Olla. T.H. was nine years old at this time. The house was referred to by the family as the "green house." Defendant, a friend of P.H.'s, came to their home on a regular basis.

D.H. testified Defendant sometimes gave T.H. money for school and

occasionally bought her candy and mood rings. When D.H. was asked whether Defendant ever helped T.H. do anything in her room, she testified he helped T.H. clean her room and sometimes would help her with her homework.

Around Easter of 2002, P.H. had a twenty-eight day stay at a rehabilitation hospital in Lake Charles for his drinking problem. During P.H.'s absence, Defendant was at the house "a good bit of the time" and would occasionally spend the night, sleeping on the couch.

D.H. testified, after the family moved to the green house, but before P.H. left for rehabilitation, P.H. was drinking heavily and they had financial problems. This resulted in a lot of arguing and disagreements. D.H. testified she was taking medication for depression, and pain medication for endometriosis. According to D.H., at times when Defendant was at her house, she was intoxicated from her medication and she was unaware of what was going on. Although D.H. testified she never heard T.H. scream or cry out, she did notice that T.H.'s behavior changed in that she was angrier than usual. D.H. denied fabricating the allegations against Defendant to protect P.H.

During P.H.'s trial testimony, he was asked whether he ever noticed Defendant taking a particular interest in T.H. He testified that Defendant bought her mood rings and candy, but nothing of any major value. Defendant also offered to help T.H. with her homework and to clean up her room. According to P.H., Defendant helped T.H. do things in her room "quite a few times." Although P.H. recalled times when T.H. and Defendant were in her room with the door shut, he testified he did not see anything inappropriate going on when he would open the door.

T.H. testified at trial that while she was living in the green house, Defendant stayed overnight about three to four times per week and he would sleep in their living

room. T.H. testified Defendant put his penis in her vagina, and when initially asked what else he did to her, she stated she could not remember. The prosecutor then asked T.H. if Defendant ever placed his penis anywhere else on her body, and she testified he put it in her "rear end" a little bit. T.H. denied that Defendant ever touched her anywhere with his tongue. When asked how many times she thought "this" happened between the time she moved into the green house and the time she finally told someone, T.H. responded, "a lot." T.H. testified she did not tell anyone about the incidents prior to telling a friend's mother in April of 2002, because she was scared and she felt threatened. She thought she would be killed if she told because "Fussell" told her that.

At trial, T.H. identified two notes that she had put on the door of her room. One note stated, "I don't want to, Leon. And I have to write in my diary, thank you." T.H. testified she wrote this note because she did not want Defendant to be in her room; however, the note did not work. The other note, was a two-page note that was found on T.H.'s bedroom door on April 22, 2002. On one page is written, "Do not disturb me by [T.H.]." The other page states, "I am doing work. Thank you."

T.H. testified Defendant showed her two photographs of dogs involved in sexual acts with humans, one being a young girl.[1] This occurred while in her room in the green house. When asked if Defendant showed her these pictures at the same time "he would do the things to [her] that [she] earlier testified to," T.H. responded, "Yes." According to T.H., Defendant also gave her cigarettes to smoke while in her room.[2] He also showed her a condom.

As mentioned above, T.H. reported the incidents to a friend's mother in April

[1] In that photograph, it is difficult to determine the age of the girl (or young woman) as the photograph was taken from behind her.

[2] The State introduced a photograph taken by Officer Cockerham in the victim's bedroom on April 20, 2002. It shows cigarette butts in an ashtray under the edge of the victim's bed.

of 2002. Defendant's behavior was reported, and T.H. was examined by Dr. I.C. Turnley. Dr. Turnley testified at trial and was accepted by the court as "an expert medical doctor with experience and also expertise in the forensic examination of alleged sexual abuse of persons." Dr. Turnley testified he obtained a history from T.H. prior to examining her. T.H. told Dr. Turnley that an adult male had penetrated her vaginally with his penis and she thought he had attempted to penetrate her anally on one occasion. She also indicated to Dr. Turnley that Defendant penetrated her vaginally with his tongue. Dr. Turnley's physical examination of T.H. indicated evidence of sexual activity; there was redness, irritation and a slight vaginal discharge. His examination indicated there was some type of vaginal penetration, but he could not identify the source. According to Dr. Turnley, it is uncommon to find this in a nine-year-old child, and it was his opinion that T.H. had been involved in some sexual activity. Although Dr. Turnley noted some redness just below the vaginal opening, nothing out of the ordinary was noted by Dr. Turnley during his examination of T.H.'s anus.

Dr. Turnley provided Detective Paul Smith with the report from his examination of T.H. An arrest warrant was issued for Defendant. Deputies Scott McLendon and Scott Cockerham executed the warrant at P.H.'s residence. When Deputy Cockerham approached Defendant, he was sitting in his truck with no shoes on. While Defendant was putting his shoes on with his left hand, "[h]e was fiddling around with his right hand and - kind of behind him." Deputy McLendon testified that when he saw the Defendant fidgeting around behind his back in the area of his pocket, he pulled Defendant out of the truck to ensure he had no weapons. After Defendant was removed from the truck, Deputy McLendon looked to see what Defendant had been "fooling with" and he found some folded pictures. These

pictures, which formed the basis for some of the pornography charges, were introduced at trial.

After Defendant's arrest, Detective Smith obtained a search warrant for his mother's home. In Defendant's bedroom closet, Detective Smith found one of the notes T.H. had put on the door of her bedroom. Along with the note, Detective Smith found numerous pictures, which were introduced at trial. T.H. testified she had never been in Defendant's mother's house and she had no idea how her note could have gotten there.

Defendant testified at trial. He denied ever having touched T.H. Although Defendant acknowledged having been in T.H.'s room with the door closed on a couple of occasions, he explained that they were throwing a ball and T.H. would close the door when the ball went behind it. According to Defendant, about the time the door would close, P.H. would open it. Defendant testified P.H. and D.H. watched him very closely. Defendant implicated Bill Morris as the perpetrator because he frequently spent the night in the house while P.H. was gone. Defendant testified he did not recall T.H. putting notes on her door, and he denied having ever seen the photographs recovered from his truck and his bedroom closet. He felt that the pictures may have been placed in his closet by either P.H. or law enforcement officers.

## I.   AGGRAVATED RAPE OF T.H.

Although he acknowledges the jurisprudence provides a victim's testimony alone can be sufficient to prove the elements of the crime, Defendant claims the State presented virtually no evidence to substantiate the victim's testimony. Specifically, he notes there was no evidence of where, when, or how often the offense occurred. He contends the medical examination is essentially meaningless considering the

absence of evidence of when the act occurred. He asserts the evidence presented by the State is not sufficient to support his conviction of aggravated rape.

Aggravated rape is committed when the act of anal, oral, or vaginal sexual intercourse transpires without the lawful consent of the victim because the victim is under the age of twelve years. La.R.S. 14:42(A)(4).

In *State v. M.J.S.*, 05-380, p. 4 (La.App. 3 Cir. 11/2/05), 916 So.2d 1215, 1218, this court, quoting *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27, stated:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. See *King*, 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

On appeal, M.J.S. challenged the credibility of the victims based on inconsistencies between their pretrial statements and trial testimonies. This court noted that the judge found the victims' testimonies credible, though he was fully aware of the complained of inconsistencies. Quoting *State v. Williams*, 00-981, p. 7 (La.App. 5 Cir. 4/1/01), 786 So.2d 805, 810, *writ denied*, 01-1377 (La. 3/28/02), 812 So.2d 646, this court further noted that corroboration of the victims' testimonies was not required:

> The testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense. *State v. Hotoph*, 99-243 (La.App. 5th Cir.11/10/99), 750 So.2d 1036, 1045, *writ denied*, 99-3477 (La.6/30/00), 765 So.2d 1062 and 00-0150 (La.6/30/00), 765 So.2d 1066; *State v. Hawkins*, 99-217

(La.App. 5th Cir.7/2/99), 740 So.2d 768, 769; *State v. Hubbard*, 97-916 (La.App. 5th Cir.1/27/98), 708 So.2d 1099, 1104, *writ denied*, 98-0643 (La.8/28/98), 723 So.2d 415.

*State v. M.J.S.*, 916 So.2d at 1219.

In the present case, the testimony presented at trial established that the Defendant had vaginal sexual intercourse with the victim, who was under the age of twelve at the time. Additionally, the victim testified that there was slight anal penetration, which is sufficient to complete the crime. *See* La.R.S. 14:41(B). Thus, the evidence presented at trial, viewed in a light most favorable to the prosecution, was sufficient for a rational trier of fact to find Defendant guilty of aggravated rape beyond a reasonable doubt.

## II. POSSESSION OF PORNOGRAPHY INVOLVING JUVENILES.

Defendant was charged with nineteen counts of possession of pornography involving juveniles, in violation of La.R.S. 14:81.1(A)(3). That portion of the statute provides:

> A. Pornography involving juveniles is any of the following:
>
> . . . .
>
> (3) The intentional possession, sale, distribution, or possession with intent to sell or distribute of any photographs, films, videotapes, or other visual reproductions of any sexual performance involving a child under the age of seventeen.

Defendant was convicted of only sixteen of the nineteen counts. Defendant correctly notes there was no evidence that he distributed the photographs or that he had the intent to distribute. However, subsection (A)(3) prohibits the possession of this material as well.

Defendant next argues the photographs do not meet the requirement of showing a "sexual performance involving a child under the age of seventeen." "Sexual performance" is defined in 14:81.1(B)(1) as "any performance or part thereof that

includes sexual conduct involving a child under the age of seventeen." "Performance" is defined in (B)(2) as "any play, motion picture, photograph, dance, or other visual presentation." Finally, "sexual conduct" is defined in (B)(3) as "actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sadomasochistic abuse, or lewd exhibition of the genitals." Defendant contends most of the photographs failed to show either a sexual performance or lewd exhibition of the genitals. Defendant's argument challenges only whether the photographs depict sexual performance or lewd exhibition of the genitals; the ages of the persons in the photographs do not seem to be at issue on appeal.

Most of the State's exhibits (each one page) contain multiple photographs. Thus, if one photograph in an exhibit clearly depicts sexual conduct, it is not necessary to address the remaining photographs in that particular exhibit.

We note S-5, S-6, S-7, S-8, S-9, S-10, S-11, S-12, S-13, S-14 and S-15 all contain at least one photograph of an act of either oral, vaginal or anal sexual intercourse. S-16 contains at least one photograph of sadomasochistic abuse and S-17 shows an act of sexual bestiality. S-18 shows a young couple involved in an act of sexual intercourse, either actual or simulated. The foregoing exhibits all contain at least one photograph depicting sexual conduct. Whether the photographs included in S-20 and S-21 depict "sexual conduct" within the meaning of the statute requires a determination of whether they portray "lewd exhibition of the genitals."

In *State v. Roberts*, 01-154, p. 8-10 (La.App. 3 Cir. 10/3/01), 796 So.2d 779, *writ denied*, 01-2974 (La. 9/20/02), 825 So.2d 1163, this court was called upon to address this same issue. In doing so, we stated:

> The supreme court in *State v. Prejean*, 216 La. 1072, 1078, 45 So.2d 627, 629 (La.1950), addressed the type of activity necessary to constitute lewd and lascivious activity:

The word 'lewd' means lustful, indecent, lascivious, and signifies that form of immorality which has relation to sexual impurity or incontinence carried on in a wanton manner. The word 'lascivious' means tending to excite lust, lewd, indecent, obscene, relating to sexual impurity, tending to deprave the morals in respect to sexual relations.

*See also*, *State v. Holstead*, 354 So.2d 493 (La.1977). Additionally, some Federal jurisprudence is helpful to our analysis. In *United States v. Dost*, 636 F.Supp. 828 (S.D.Cal.1986), *aff'd*, 813 F.2d 1231 (9th Cir.1987), the trial court was called upon to determine whether certain images constituted "lascivious exhibition of the genitals or pubic area" as prohibited "sexually explicit conduct" under 18 U.S.C. § 2255(2)(E) of the Child Protection Act of 1984, as amended. In formulating factors to be considered, the trial court stated the following:

Because of the sexual innocence of children, that which constitutes a "lascivious exhibition" of a child's genitals will be different from that of a "lascivious or lewd exhibition" of an adult's genitals. For example, Judge Miller in [*United States v. Nemuras*, 567 F.Supp. 87 (D.Md.1983), *aff'd*, 740 F.2d 286 (4th Cir.1984) ] referred to the sexual coyness of the visual depiction. A child of very tender years, because of his innocence in matters sexual, would presumably be incapable of exuding sexual coyness. Sexual coyness is an expression outside the young child's range of experience.

Instead this Court feels that, in determining whether a visual depiction of a minor constitutes a "lascivious exhibition of the genitals or pubic area" under § 2255(2)(E), the trier of fact should look to the following factors, among any others that may be relevant in the particular case:

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

Of course, a visual depiction need not involve all of these factors to be a "lascivious exhibition of the genitals or pubic area." The determination will have to be made based on the overall content of the visual depiction, taking into account the age of the minor.

*Id*. at 832.

These factors have been applied in other Federal cases. *See United States v. Wiegand*, 812 F.2d 1239 (9th Cir.1987); *United States v. Amirault*, 173 F.3d 28 (1st Cir.1999). In *Amirault*, the court stated:

We believe that the *Dost* factors are generally relevant and provide some guidance in evaluating whether the display in question is lascivious. We emphasize, however, that these factors are neither comprehensive nor necessarily applicable in every situation. Although *Dost* provides some specific, workable criteria, there may be other factors that are equally if not more important in determining whether a photograph contains a lascivious exhibition. The inquiry will always be case-specific.

*Amirault*, 173 F.3d at 32.

We agree with the *Amirault* rationale in that we find the *Dost* factors helpful in our analysis herein but do not find them all inclusive or necessarily applicable to every situation. However, because the factors do provide some specific, workable criteria to use in our analysis, we consider them together with all the evidence before us.

*Id.* at 785-87.

In the twelfth photograph shown in S-20, a young girl is nude and sitting on the floor with her legs spread. The focal point of the photograph is her pubic area. Clearly, a rational trier of fact could find this photograph is intended to elicit a sexual response in the viewer. Additionally, a similar conclusion could be reached by a rational trier of fact concerning the last (sixteenth) photograph on this page. Although the focal point of the photograph is not on the girl's genitalia or pubic area, it is clearly visible, and the setting of the photograph is sexually suggestive. The completely nude girl is lying on a bed with her legs propped up on the headboard,

with one knee bent, looking back at the camera.[3] The jury's determination that the foregoing photographs constituted a "lewd exhibition of the genitals" was supported by the evidence.

Lastly, one of the four photographs shown in S-21 also clearly constitutes "lewd exhibition of the genitals." The second photograph shown on S-21 is of two nude young girls. One of the girls' genitalia is partially exposed and the two girls are on a bed in a suggestive pose. A rational trier of fact could find this photograph is intended to elicit a sexual response in the viewer.

Because S-20 and S-21 clearly contain photographs meeting the definition of "lewd exhibition of the genitals," the definition of "sexual conduct" in La.R.S 14:81.1 was met. We find the State proved the contested elements of La.R.S.14:81.1(A)(3) beyond a reasonable doubt. Thus, this assignment of error has no merit.

### ASSIGNMENT OF ERROR NO. 2

Defendant contends his possession of pornography constituted only one offense and that only one sentence should have been imposed within the range stated by the legislature. He argues if the legislature intended a separate sentence for each individual image, it could have included language to that effect in La.R.S. 14:81.1

In support of his position, Defendant first notes that in *Roberts*, although the defendant was found downloading and viewing several images, he was convicted of only one charge of pornography. Additionally, Defendant contends this court, in sustaining the conviction, reviewed several of the images, but found only one was sufficient to sustain the conviction. We find *Roberts* is distinguishable from this case. The defendant in *Roberts,* though he possessed numerous pictures, was charged with

---

[3] There are other photographs in S-20 which likely constitute lewd exhibition of the genitals; however, because the two discussed clearly meet this criteria, there is no need to discuss the remaining photographs.

only a *single count* of pornography. Defendant in the present case was charged with nineteen counts. The trial court in *Roberts* found three of the photographs constituted pornography. This court, after finding the first of the three photographs met the definition of "lewd exhibition of the genitals," felt it was unnecessary to address whether the two remaining photographs also met the definition. The issue of whether the act constituted more than one offense was not presented in *Roberts*.

However, the issue *was* presented to the first circuit in *State v. Kujawa*, 05-470 (La.App. 1 Cir. 2/22/06), 929 So.2d 99. In *Kujawa*, the defendant challenged the trial court's denial of his motion to quash, contending he should have been charged with only one count of pornography involving juveniles, as opposed to sixty-two counts, because the pictures were seized on the same date at the same location. He claimed that the filing of multiple charges for a single offense constituted double jeopardy. The first circuit, recognizing the issue to be *res nova*, discussed the pertinent state and federal jurisprudence. The court first considered cases from the Louisiana Supreme Court, the United States Supreme Court, and the Federal Fifth Circuit Court of Appeal:

> We find no cases which squarely decide the precise issue here, that is, whether each count charged pursuant to La. R.S. 14:81.1, under these particular facts, constitutes a separate and distinct crime or whether all counts fall under only one crime. The issue is *res nova*. In construing La. R.S. 14:81.1, we consider two established rules of statutory construction: (1) all criminal statutes are construed strictly, and (2) the words of a statute must be given their everyday meaning. *See State ex rel. Robinson v. Blackburn*, 367 So.2d 360, 363 (La.1979) and La. R.S. 14:3.
>
> The applicable provisions of La.R.S. 14:81.1 read as follows:
>
> A. Pornography involving juveniles is any of the following:
>
> . . . .
>
> (3) The intentional possession, sale, distribution, or possession with intent to sell or distribute of any photographs, films, videotapes, or

other visual reproductions of any sexual performance involving a child under the age of seventeen.

. . . .

E. Whoever commits the crime of pornography involving juveniles shall be fined not more than ten thousand dollars and be imprisoned at hard labor for not less than two years or more than ten years, without benefit of parole, probation, or suspension of sentence.

Under the statute, the contraband items are described using the plural form, *i.e.*, photographs, films, videotapes, or other visual reproductions. [8] The defendant suggests that the intent of the legislature was to prohibit a course of conduct, *e.g.*, the possession of pictures, be it fifteen or fifty, rather than to authorize the multiple charging of a defendant for each separate and distinct picture possessed. The mere fact that words are in the plural, however, is not dispositive of legislative intent. [10]

Several Louisiana decisions have found that a single count was the proper charge regardless of the number of prohibited acts performed by the defendant. In *State v. Freeman*, 411 So.2d 1068 (La.1982), two defendants were each convicted on three counts of hunting deer at night and three counts of hunting or taking deer in closed season. The statute at issue prohibited the hunting of "deer" at certain proscribed times. The defendants argued that finding them both guilty of six violations of the statute, when in fact only two existed, subjected them to triple punishment for each of the two violations. The Supreme Court found that the word "deer" without being preceded by an article of "a," "an" or "the," was not limited to the singular, but also encompassed the plural form. *Id*. at 1072. The court found that if the legislative aim had been to make the taking of each individual deer an offense, it would have clearly expressed that intent, and to construe the statutory provisions otherwise would permit prosecutors to create multiple offenses without a legislative grant of authority. *Id. See also State v. Hungerford*, 278 So.2d 33 (La.1973), and *State v. Price*, 475 So.2d 6 (La.App. 4th Cir.1985), *writ denied*, 484 So.2d 664 (La.1986).

A review of the jurisprudence in other jurisdictions reveals that there is no clear consensus on what constitutes the proper unit of prosecution when interpreting statutes prohibiting child pornography or similar offenses. [11]

The following decisions found that the indictments against the defendants containing multiple counts for a single offense impermissibly charged each act as a separate unit of prosecution.

In *Bell v. United States*, 349 U.S. at 82, 75 S.Ct. at 62, the relevant provision of the Mann Act stated:

Whoever knowingly transports in interstate or foreign commerce ... any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose....

. . . .

Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

The defendant in *Bell*, having transported two women on the same trip and in the same vehicle, pleaded guilty to two counts of violating the Mann Act, one count for each woman. On appeal, the defendant argued he committed only a single offense and could not be subjected to cumulative punishment under the two counts. The Court of Appeals affirmed the District Court, finding that two separate offenses were committed because, even though the act of transportation was a single one, the unlawful purpose was necessarily personal as to each of the women.

The United States Supreme Court reversed the Court of Appeals and stated:

Congress could no doubt make the simultaneous transportation of more than one woman in violation of the Mann Act liable to cumulative punishment for each woman so transported. The question is: did it do so? It has not done so in words in the provisions defining the crime and fixing its punishment.

. . . .

It is not to be denied that argumentative skill, as was shown at the Bar, could persuasively and not unreasonably reach either of the conflicting constructions.

. . . .

When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity.

. . . .

This in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read. Nor does it assume that offenders against the law carefully read the penal code before they embark on a crime. It merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction

-14-

into multiple offenses, when we have no more to go on than the present case furnishes.

*Bell v. United States*, 349 U.S. at 82-84, 75 S.Ct. at 622.

In *United States v. Reedy*, 304 F.3d 358 (5th Cir.2002), the defendants owned and operated Landslide, Inc., an Internet website that provided a computerized credit card verification service used by various webmasters whose websites contained child pornography. The defendants were charged with 43 counts (one count for each individual image) of committing activities relating to material constituting or containing child pornography and aiding and abetting in violation of 18 U.S.C. §§ 2252A and 2. The applicable law made it a crime to knowingly ship or transport in interstate commerce "any visual depiction" of a minor engaging in sexually explicit conduct. "Visual depiction" was defined in § 2256(5) as "including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means." In § 2252(a)(4)(b), however, "visual depiction" was defined as including one or several images, *i.e.*, "books, magazines, periodicals, films, video tapes, ...." The defendants in *Reedy* argued that there were ten websites containing child pornography and that accordingly there should have been only ten counts for each violation of the applicable statutory provisions instead of 43 counts, a count for each of the 43 pictures. The court found that the word "any" was a source of ambiguity. *Id.* at 365. In finding the criminal statute failed to provide an answer, the Fifth Circuit relied on *Bell v. United States*, *supra*, and invoked the rule of lenity, finding that the district court erred in permitting the prosecution to group the counts by individual image rather than by website. *Id.* at 367-68. *12*

*Id.* at 368, n. 14.

*Kujawa*, 929 So.2d at 104-107 (footnotes 7 and 9 omitted).

---

[8] The legislative history provides no further guide to the meaning of these words.

10 *See, e.g., State v. Howell*, 169 N.C.App. 58, 609 S.E.2d 417, 419 (N.C.App.2005), where a North Carolina appeals court found that the use of the plural in defining "material" (i.e. "material" defined as "pictures," "drawings," "video recordings," etc.) was merely a matter of style.

In its brief, the state contends that the words "photographs, films, videotapes, or other visual reproductions" are qualified with the words "of a child" rather than "of *any* child." As such, the state asserts, it was the legislative intention that each visual reproduction of a different child is a separate crime. We do not find any significance in the use of the word "a" instead of "any" in the statute. The use of the words "a child" rather than "*any* child" does not, as asserted by the state, clarify legislative intent with regard to the proper unit of prosecution. The use of "a child" rather than "any child" is not a source of ambiguity. The central object of the statute does not relate to the terms "a child" or "any child," but rather to the possession of items containing child pornography. The proper focus, thus, is on the legislative intent in designating prohibited items using the plural form. The unit of prosecution refers to the offense proscribed by the statute, not the class of persons the statute protects.

11 An inherent difficulty with this approach is that the various provisions of the other states' laws do not, to the degree necessary for any reliable comparison, parallel the applicable provisions of our own

law. Furthermore, the factual scenarios of the various decisions are so diverse that application of a similar legal analysis to the case at hand would provide little practical guidance in resolving the issue, since any decision without virtually identical facts would be readily distinguishable. *See, e.g., Bell v. United States*, 349 U.S. at 83, 75 S.Ct. at 622, where Justice Frankfurter states:

> [I]t will not promote guiding analysis to indulge in what might be called the color-matching of prior decisions concerned with 'the unit of prosecution' in order to determine how near to, or how far from, the problem under this statute the answers are that have been given under other statutes.

> We nevertheless review jurisprudence from other states to demonstrate the various analyses employed by those courts to resolve the issue.

[12] It should be noted, however, that the result in *Reedy* was expressly limited by the court to the particular factual situation present, *i.e.*, "a security screening system that aggregates websites containing child pornography."

The *Kujawa* court then discussed a number of federal cases (which were not from the U.S. Fifth Circuit Court of Appeal) which analyzed the language of similar statutes and concluded that each separate count was "an allowable unit of prosecution." *Id.* at 107. After considering those cases, the first circuit turned its attention to La.R.S. 14:81.1 and concluded that each image was a basis for prosecution:

> Based on our review of the jurisprudence, we find the defendant's emphasis upon the plural form of the contraband items is misplaced. A fundamental rule of statutory interpretation is that a statute should be considered as a whole, and its separate provisions considered in their context to each other. *See* La. R.S. 1:3 & 14:3. A careful reading of the entire statute reveals that the legislative intent was to proscribe possession of any single image. The use of the plural form was clearly a matter of grammatical style and not suggestive of an intent to establish a unit of prosecution based upon a broad course of conduct involving multiple contraband images. *See* La. R.S. 1:7. For example, paragraph C of La. R.S. 14:81.1 provides:

>> Possession of three or more of the same photographs, films, videotapes, or other visual reproductions shall be prima facie evidence of intent to sell or distribute.

> It can hardly be considered reasonable in this context to interpret the phrase "the same photographs, films, videotapes, or other visual representations" as referring to identical sets of multiple images, as opposed to the same image, in order for the presumption to apply. This conclusion is reinforced by consideration of the specific language of paragraph F:

>> *Each* photograph, film, videotape, or other reproduction of any sexual conduct involving a child under

the age of seventeen shall be contraband and shall be seized and disposed of in accordance with law.

Further, the use of the singular form of the contraband images in La. R.S. 14:81.1(G), although not as persuasive, supports this conclusion.

Finally, we conclude that the use of the article "any" to modify the proscribed images evidences a clear legislative intent that each such image constitutes a basis for a unit of prosecution. *See State v. Multaler*, 252 Wis.2d at 83, 643 N.W.2d at 451; *State v. Cobb*, 143 N.H. 638, 647-48, 732 A.2d 425, 433-34 (1999). This interpretation best accords with the unequivocal legislative intent to effectively suppress the particular evil addressed by the statute. The trial court did not err in denying the defendant's motion to quash.

*Id.* at 110-11.

Although we are respectful of the majority's opinion in *Kujawa*, we are troubled by what we feel is ambiguous language in La.R.S. 14:81.1. Judge Downing set forth a dissenting opinion in *Kujawa*, which Defendant adopted in brief. It stated as follows:

I respectfully dissent. The majority takes what is, at best, an ambiguous statute and reaches a result that is contrary to established principles of statutory interpretation.

It is not clear from a plain reading of La. R.S. 14:81.1 what constitutes an allowable unit of prosecution. While it is not unreasonable to interpret the plural form of the prohibited items in La. R.S. 14:81.1(A)(3) as suggestive of permitting only one count regardless of the number of pictures possessed, such an interpretation is in no way definitive, or even necessarily preferred. Indeed, a rational argument could be made for either of the conflicting constructions. [1]

The rule of lenity applies not only to interpretations of the substantive ambit of criminal laws but also to the penalties imposed by those laws. *State v. Campbell*, 03-3035, p. 9 (La.7/6/04), 877 So.2d 112, 118. Where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant. *See Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971).

In giving a genuine construction consistent with the plain language of La. R.S. 14:81.1(A)(3), which is, at best, ambiguous as to the allowable unit of prosecution, and keeping in mind the strict construction mandated under the rule of lenity, the defendant's sentences, which imposed ten years for each count of possession of

pornography involving juveniles, should not stand. *See Campbell*, 03-3035 at pp. 9-10, 877 So.2d at 118. I conclude under the particular facts herein that the trial court erred in permitting the prosecution to charge separate counts for each picture possessed. [2]

*Id.* at 114.

_____

[1] Finding that the allowable unit of prosecution is for each picture possessed leads to disparate sentencing schemes. On the other hand, finding that individual pictures are not the proper unit of prosecution means that whether a defendant possesses 10 pictures or 1,000 pictures, the maximum sentence would be 10 years. It is also unclear under the statute whether the downloading of pictures one at a time over a course of minutes or hours is analytically distinguishable from simply possessing the pictures simultaneously. *But see* Official Revision Comment (d) to La.Code Crim. P. art. 596 (Requirements for double jeopardy), which states:

> Clause (2) of the above Art. 596 is necessary to prevent multiple prosecutions for continuous offenses. For example, possession of stolen goods or narcotics may continue over a long period of time and may involve more than one object. Yet, obviously there should be only one prosecution for what is in effect one criminal course of conduct.

[2] Based on this record, I would not establish any bright-line rule regarding what constitutes an allowable unit for prosecution of possession of pornography involving juveniles. This decision is confined to the unique facts of this case. (Remainder of footnote omitted).

In *State v. Freeman*, 411 So.2d 1068, 1072 (La.1982), the Louisiana Supreme Court stated:

> It is well established that criminal statutes are to be strictly construed and, in the absence of an express legislative intent, any doubt or ambiguity should be resolved in favor of lenity and not so as to multiply the penalty imposed. *State v. Boniface*, 369 So.2d 115 (La.1979); *State v. Cox*, 344 So.2d 1024 (La.1977). R.S. 14:3. We also recognize that the guarantee against double jeopardy found in the United States Constitution embodies a dual protection-prohibiting multiple prosecutions for the same offense, as well as multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

A reading of La.R.S. 14.81.1 convinces us it is ambiguous as to what constitutes an allowable unit of prosecution. Therefore, under the appropriate rules of statutory construction, this ambiguity must be resolved in favor of lenity and the Defendant's multiple convictions for possession of pornography should be reduced to a single conviction and the case remanded for resentencing as to that conviction.

**ASSIGNMENT OF ERROR NO. 3**

Defendant claims the trial court erred in denying his motion to sever. He contends that having to defend unrelated pornography charges hindered his defense and made the jury hostile against him on the aggravated rape charge.

Louisiana Code of Criminal Procedure Article 493 provides:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.

We find the offenses were properly joined pursuant to Article 493. Although different types of crimes, the evidence showed that at the time Defendant raped the victim, he showed her some of the pornographic photographs of which he was later found in possession. Additionally, the note written by the victim and put on her bedroom door in an attempt to keep Defendant out of her room, was found with the pornographic pictures found in Defendant's room at his mother's house. Furthermore, the crimes, both requiring hard labor sentences, were triable by the same mode of trial.

The focus of Defendant's argument is the prejudice he suffered as a result of the joinder. Louisiana Code of Criminal Procedure Article 495.1 provides:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.

In *State v. Deruise*, 98-541, p. 7 (La. 4/3/01), 802 So.2d 1224, 1232, *cert. denied*, 534 U.S. 926, 122 S.Ct. 283 (2001), the supreme court stated:

> A motion to sever is addressed to the sound discretion of the trial court, and the court's ruling should not be disturbed on appeal absent a showing of an abuse of discretion. *Brooks*, 541 So.2d at 804 (citing *State v. Williams*, 418 So.2d 562, 564 (La.1982)). In ruling on such a motion, the trial court must weigh the possibility of prejudice to the

defendant against the important considerations of economical and expedient use of judicial resources. In determining whether joinder will be prejudicial, the court should consider the following: (1) whether the jury would be confused by the various counts; (2) whether the jury would be able to segregate the various charges and evidence; (3) whether the defendant would be confounded in presenting his various defenses; (4) whether the crimes charged would be used by the jury to infer a criminal disposition; and (5) whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. *Id.* (quoting *State v. Washington*, 386 So.2d 1368, 1371 (La.1980)). However, the fact that evidence of one of the charges would not be admissible under *State v. Prieur*, 277 So.2d 126 (La.1973), in a separate trial on the joined offense, does not per se prevent the joinder and single trial of both crimes, if the joinder is otherwise permissible. *State v. Davis*, 92-1623, p. 9 (La.5/23/94), 637 So.2d 1012, 1019 (citing *State v. Celestine*, 452 So.2d 676 (1984)). Finally, there is no prejudicial effect from joinder of two offenses when the evidence of each is relatively simple and distinct, so that the jury can easily keep the evidence of each offense separate in its deliberations. *Brooks*, 541 So.2d at 805.

The charges involved in this case, aggravated rape and possession of pornography involving juveniles, are readily distinguishable from each other and they were presented to the jury in a simple, orderly manner. The jury's acquittal of Defendant on three of the possession of pornography charges clearly suggests the jury considered each charge separately. Accordingly, Defendant has not shown he was prejudiced by the joinder of the aggravated rape and possession of pornography charges, and the denial of the motion to sever does not constitute reversible error.

**ASSIGNMENT OF ERROR NO. 4**

Defendant claims the trial court erred in allowing him to argue his own *pro se* motions without first obtaining a waiver of his right to counsel. Specifically, Defendant refers to his *pro se* motion to sever the charges, his motion to quash the indictment as to the pornography charges, and his motion for new trial.

The State notes that at no time was Defendant required to argue any motions without the ability to consult with his counsel of record, and in each instance that he argued a *pro se* motion before the court, his attorney was present and available to

him.  For example, although his attorney allowed Defendant to argue his motion to quash alleging that the time limits for commencement of trial on the pornography charges had lapsed, Defendant's attorney interrupted the State's argument on this issue.  Defense counsel stood up and proceeded to refute the State's argument, explaining that the interruption referred to by the State, which it alleged occurred by the defense filing a motion to quash, concerned only the charge of aggravated rape, not the pornography charges.  After hearing counsel's argument, the court noted it had granted a joint motion to stay in the proceedings which applied to both charges.  Defense counsel then reiterated he was intervening in the hearing simply to make clear the motion to quash he previously filed concerned only the rape charges, not the pornography charges.  Near the close of the hearing, the judge made the record accessible for everyone to calculate the time, should they desire to do so.  However, he stated unless something different was pointed out to him, his impression was there had been enough motions to suspend the time limitations so that the two years had not run.

We also note, if any error occurred, it would be harmless, as the trial court's ruling on the *pro se* motions are before this court on appeal.

**ASSIGNMENT OF ERROR NO. 5**

Defendant contends the trial court erred in denying his January 6, 2005 motion to quash for untimely prosecution.  He notes the indictment charging him with aggravated rape and pornography involving juveniles was filed on June 6, 2002, and his motion to quash, filed January 6, 2005, was well beyond the two-year time limitation of La.Code Crim.P. art. 578.  Defendant does concede during that time, there were preliminary motions filed with respect to the aggravated rape charge, but he claims there were no preliminary motions filed on the separate pornography

charges until September 9, 2004, when the parties filed a joint motion to stay all proceedings.

Louisiana Code of Criminal Procedure Article 578 requires the trial of a felony to be commenced no more than two years from the date of institution of the prosecution; however, the time limitation may be suspended by certain filings. Louisiana Code of Criminal Procedure Article 580 provides:

> When a defendant files a motion to quash or other preliminary plea, the running of the periods of limitation established by Article 578 shall be suspended until the ruling of the court thereon; but in no case shall the state have less than one year after the ruling to commence the trial.

The indictment charging Defendant with aggravated rape and possession of pornography involving juveniles was filed June 6, 2002. Thus, the State had until June 6, 2004 to bring Defendant to trial; however, on January 5, 2004, the defense filed a motion to quash challenging the constitutionality of the death penalty. The motion was denied on April 6, 2004, and Defendant requested and was granted thirty days to file a writ application with this court. After extensions of time for the filing of the writ were granted to the defense, the writ was filed in this court on July 15, 2004. On September 9, 2004, the parties filed a joint motion for a stay of the proceedings. The stay of the proceedings was granted pending resolution of the issue at the appellate level. This court's ruling denying Defendant's writ application was rendered September 23, 2004. A writ application was then filed in the Louisiana Supreme Court and its ruling denying the application was issued December 17, 2004. Thus, the one year period allowed for the State to bring the Defendant to trial had not run when the motion to quash was filed in January 2005.

Defendant's argument that the motion to quash did not suspend the time limitations for the pornography charges because it dealt with only aggravated rape is

without merit. In *State v. Washington*, 02-1346 (La. 5/20/03), 846 So.2d 723, the supreme court held the defendant's writ application concerning his pleas for armed robbery prevented the state from proceeding to trial on the rape charge that was properly joined in an indictment with the armed robbery, in accordance with La.Code Crim.P. art. 493.

As was discussed earlier, the offenses in this case were properly joined in a single indictment. Accordingly, the time during which the defense sought review of the trial court's ruling regarding the aggravated rape charge prevented the State from proceeding to trial on the pornography charges. Thus, the motion to quash was properly denied by the trial court.

<span style="text-align:center">**ASSIGNMENT OF ERROR NO. 6**</span>

Defendant contends the trial court erred in failing to sequester the State's witnesses until after the completion of opening arguments. He contends the witnesses were allowed to hear a "roadmap of the entire state's case, including summaries of all of the other state's witnesses, and a summary of the defendant's defenses [sic] to those witnesses."

Just prior to opening statements, the prosecutor requested that his witnesses be sequestered after the opening statements. Defense counsel responded, "I would prefer it the other way around, I don't have that much say in the matter. I don't think any of these witnesses made - may made available with either the theory or the State's case or that it he has set forth for the jury." (as written). Since only one side was being sequestered, the court allowed the State to choose when its witnesses would be sequestered. Defense counsel objected to this ruling.

Louisiana Code of Evidence Article 615 states in pertinent part:

> **A. As a matter of right.** On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded

from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion.

**B. Exceptions.** This Article does not authorize exclusion of any of the following:

(1) A party who is a natural person.

(2) A single officer or single employee of a party which is not a natural person designated as its representative or case agent by its attorney.

(3) A person whose presence is shown by a party to be essential to the presentation of his cause such as an expert.

(4) The victim of the offense or the family of the victim.

In *State v. Evins*, 626 So.2d 480, 490 (La.App. 3 Cir. 1993), this court stated:

"The often repeated purpose of the rule is to prevent witnesses from being influenced by prior testimony and to strengthen the role of cross-examination in developing the facts." *State v. Williams*, 346 So.2d 181, 185 (La.1977), citing *State v. Johnson*, 343 So.2d 155 (La.1977) and *State v. Bias*, 337 So.2d 426 (La.1976). However, as stated earlier, the trial judge may, in the "interest of justice," modify his exclusion order and should he choose to do so, his ruling will not be disturbed on appeal absent an abuse of discretion. *State v. Williams, supra*.

We find the trial court did not err in failing to sequester the victim and her parents, D.H. and P.H. *See* La.Code Evid. art. 615(B)(4). Although the court did err in refusing to sequester the remaining witnesses at the request of the defense, Defendant has not shown he was substantially prejudiced by the presence of the witnesses during opening statements or that "the exposure of the witnesses was sufficient to affect the witnesses' testimony or to undermine the defendant's ability to cross-examine the witnesses." *See State v. Sims*, 98-1304, p. 7, (La.App. 1 Cir. 4/1/99), 734 So.2d 813, 818.

**ASSIGNMENT OF ERROR NO. 7**

Defendant complains that the sentences imposed for his possession of pornography convictions are excessive. This claim is rendered moot by our remand of this case for resentencing as to the possession of pornography conviction.

## *PRO SE* BRIEF A

Defendant has filed three *pro se* briefs raising numerous claims, many more than once, and some of which are extremely difficult to follow. Although Defendant did not designate his claims as assignment of errors in this particular brief, we will do so, combining related claims into single assignments.

## ASSIGNMENT OF ERROR NO. 1:

Defendant first complains he was denied a 72-hour hearing on his charges. Louisiana Code of Criminal Procedure Article 230.1 requires that a person be brought before a judge for appointment of counsel within seventy-two hours of arrest; however, noncompliance has no effect on the validity of the subsequent proceedings. See La.Code Crim.P. art. 230.1(D).

In *State v. Manning*, 03-1982, p. 28 (La. 10/19/04), 885 So.2d 1044, 1075-76, *cert. denied*, 544 U.S. 967, 125 S.Ct. 1745 (2005), the supreme court stated:

> The remedy for violation of LA.CODE CRIM. PROC. ANN. art. 230.1 is pre-trial release, *see* LA.CODE CRIM. PROC. ANN. art. 230.1(C), and has "no effect whatsoever upon the validity of the proceedings thereafter. . . ." LA.CODE CRIM. PROC. ANN. art. 230.1(D); *State v. Tauzier*, 397 So.2d 494, 505 (La.1981); *cf.* LA.CODE CRIM. PROC. ANN. art. 701(B)(2) (remedy for violation of speedy trial statute is pre-trial release, not reversal of conviction); *State v. Johnson*, 622 So.2d 845, 848 (La.App. 4 Cir.1993) (same).

When this issue was raised at the hearing on Defendant's *pro se* motion for new trial, the judge informed Defendant although he did not have a seventy-two-hour hearing, he was referred to the Indigent Defender Board (IDB) for his aggravated rape charge and no bond was set. As for the sexual battery charge, the judge explained that Defendant was referred to the IDB and a bond was set within seventy-two hours,

although Defendant was not brought before a judge. The pornography charges were not discussed.

Consideration of the action taken on each of the charges and whether that action satisfied La.Code Crim.P. art. 230.1 is unnecessary, as Defendant is not entitled to relief as stated in *Manning* and La.Code Crim.P. art. 230.1(D). Thus, this assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2:

Defendant contends he was denied the "right to go in front of the grand jury." Presumably, Defendant means he was not allowed to testify at the grand jury proceeding. Louisiana Code of Criminal Procedure Article 442 requires the grand jury to hear all evidence presented by the district attorney. Although it may hear evidence for the defense, it is not required to do so. Thus, Defendant was not entitled to an appearance before the grand jury.

## ASSIGNMENT OF ERROR NO. 3:

Defendant complains he was not timely charged with aggravated rape and sexual battery within sixty days of his arrest. Additionally, Defendant contends the trial court failed to rule on his January 5, 2005 motion to quash regarding the failure to timely prosecute him on the sexual battery charge. Finally, Defendant contends he was never arraigned on the charge of sexual battery.

The arrest for sexual battery occurred on April 20, 2002 and for aggravated rape on April 26, 2002. Defendant was later indicted for aggravated rape on June 6, 2002. Information provided by the State at the April 12, 2005 hearing on pretrial motions indicates the sexual battery charge was filed under a different docket number than the aggravated rape and possession of pornography charges. Because the sexual battery and aggravated rape involved the same course of conduct, the State chose, at

the April 12, 2005 hearing, to dismiss the sexual battery charge with prejudice. Thus, any claims regarding that charge are now moot.

As for the alleged untimely indictment on the charge of aggravated rape, Defendant's claim has no merit in that he was indicted within sixty days of arrest.

**ASSIGNMENT OF ERROR NO. 4:**

Defendant claims he was not brought to trial timely on the charges of possession of pornography involving juveniles. Additionally, he contends these charges should have been severed from his aggravated rape charge. These issues were raised by appellate counsel and found meritless, as discussed earlier.

**ASSIGNMENT OF ERROR NO. 5:**

Defendant claims the State failed to transmit all evidence received by the grand jury to the clerk of court as required by La.Code Crim.P. art. 297. Article 297 requires the court to transmit certain documents to the clerk of court following a *preliminary examination* unless the court finds there is not probable cause to charge him. Defendant asserts the bag containing the pornography was left in Detective Paul Smith's possession as a result of the State's failure to place the evidence in the court's control. Defendant contends, when the bag of evidence was introduced at trial, the seal was broken and the trial court erred in allowing it to be introduced in evidence. Defendant claims the pictures were altered to change the outcome of trial. This issue was raised by Defendant at the hearing on the motion for new trial and post verdict judgment of acquittal; both motions were denied by the trial court.

As support for his allegation, Defendant refers to a November 8, 2005 letter written by the prosecutor to defense counsel indicating he had recently discovered some documents in the sheriff's file of which he was previously unaware. Defendant questions how the evidence could have been placed in the evidence bag if November

8, 2005, was the first time the prosecutor saw it, and concludes the prosecutor must have tampered with the evidence and altered it to change the outcome of trial. However, we note the prosecutor's list of newly discovered documents did not include any of the pornographic photographs.

At trial, the officers who recovered the pornographic pictures identified the photographs introduced at trial as those found in Defendant's truck and in his bedroom closet. Defendant's allegation that the evidence was altered by the State is a conclusory allegation not substantiated in the record and, thus, warrants no relief.

**ASSIGNMENT OF ERROR NO. 6:**

Defendant claims that during the defense's objection to the court's refusal to sequester the witnesses, the prosecutor admitted he spent three and one-half years teaching his witnesses what to say, which rendered their testimony involuntary. Defendant states there were inconsistencies between the witnesses' statements to authorities and their trial testimonies. He suggests the State's witnesses' testimonies were inadmissible, which would necessitate his acquittal.

Just prior to opening statements, the prosecutor requested that his witnesses not be sequestered until after the opening statement. Defense counsel objected to the State's request, and in response, the prosecutor made the statement which forms the basis for Defendant's argument on appeal:

> MR. KUTCH: Your Honor, I would prefer it the other way around, I don't I have that much say in the matter. I don't think any of these witnesses made – may made available with either the theory or the State's case or that it he has set forth for the jury.

> MR. KENDRICK: I've had three years to talk to him and do whatever I want (inaudible).

> THE COURT: Well, if this was gonna be a complete sequestration I'd agree with you but it's not. So, we're just sequestering one side so I would think that if the – I will permit the State to choose when to have it's witnesses sequestered and if it chooses to have such done after the

-28-

opening argument, then I don't really have a problem with that because of those reasons.

(As written).

Defendant claims this comment was an admission by the prosecutor that he coached his witnesses. We find a more reasonable interpretation of the prosecutor's comment is that he had access to his witnesses and the opportunity to speak with them for three years. Additionally, although there are inconsistencies in the victim's statement and her trial testimony, these do not establish Defendant's claim that she was coached by the prosecutor. Furthermore, the victim's testimony and her pretrial statement regarding anal intercourse with Defendant was consistent. Therefore, this assignment of error has no merit.

**ASSIGNMENT OF ERROR NO. 7:**

Defendant claims the jury was not "fully" sequestered, which was improper because this was a capital case. He contends the jurors were allowed to "run all over the courthouse during recess [and] lunchbreak." Our review of the *voir dire* transcript reveals no objection regarding the lack of sequestration, and Defendant has not referenced any point in the record where such an objection was raised.[4] Thus, this claim was not properly preserved for appeal. Additionally, the sequestration rule for capital cases does not apply to this case. *See* La.Code Crim.P. art. 791, La.R.S. 14:42(D)(2)(b), and *State v. Kinsel*, 00-1610 (La.App. 5 Cir. 3/28/01), 783 So.2d 532, *writ denied*, 01-1230 (La. 3/28/02), 812 So.2d 641.

**ASSIGNMENT OF ERROR NO. 8:**

Defendant contends the State refused to turn over all DNA reports. He contends there was DNA found on the victim and on "towels and clothes." He states

---

[4] We note Defendant cites a portion of the record in conjunction with this claim; however, that portion of the transcript concerns sequestration of the witnesses, not the jury.

the DNA did not match his and he should be acquitted of the rape charge.

Defense counsel filed a motion for discovery in which he requested the results or reports from any scientific testing. In response to the defense's motion for discovery, the State provided numerous documents, including evidence transfer receipts for various items submitted to the crime lab by the LaSalle Parish Sheriff's Office. In the "Analysis Requested" section of the forms, "DNA" was written.

On March 24, 2003, the State filed a motion requesting that a hair from the pubic combing of the victim be tested via the PCR method, which would leave no sample for separate defense testing. On September 10, 2003, the prosecutor sent a letter to the North Louisiana Criminalistics Laboratory requesting that the sample be tested as soon as possible; defense counsel signed the bottom of the letter, indicating his assent to the testing, which would consume the sample, rendering retesting impossible. On November 17, 2003, the parties filed a joint motion to continue because DNA analysis had not yet been completed. Attached to a February 2, 2005 *pro se* Motion to Subpeona Witnesses is a copy of February 2, 2004 results of DNA testing of the hair from the pubic hair combing, indicating DNA analysis did not detect the presence of amplifiable DNA. Thus, Defendant had a copy of this report well in advance of trial. Additionally, it is clear defense counsel also was provided a copy of these results. Although the remaining samples submitted to the crime lab were marked for DNA analysis, there is no indication that the State made a specific request for testing as it did for the pubic hair sample. Defendant has provided no evidence that DNA testing was carried out on any of the other items. As this court noted in *State v. Chesson*, 03-606 (La.App. 3 Cir. 10/1/03), 856 So.2d 166, *writ denied*, 03-2913 (La. 2/13/04), 867 So.2d 686, in the event such evidence does exist, Defendant may develop it in an application for post-conviction relief; however, at this

point, Defendant's claim lacks a factual basis and is denied.

**ASSIGNMENT OF ERROR NO. 9:**

In this assignment of error, Defendant claims the filing of a "false" joint motion for continuance and the signing of a court order dated December 2, 2003 comprised perjury, conspiracy, and obstruction of justice in that they were intended to change the "outcome of motion to quash time limitation" on the pornography charges. However, Defendant has submitted no proof in support of these allegations, and we find no merit in his claims.

**ASSIGNMENT OF ERROR NO. 10:**

Defendant claims his trial counsel was ineffective in failing to respond to his letters asking questions about the case. Because the record is insufficient to rule on this claim, the claims are relegated to post-conviction relief proceedings. *See State v. Schexnaider*, 03-144 (La.App. 3 Cir. 6/4/03), 852 So.2d 450.

Defendant also appears to claim he was denied a request for a bill of particulars from his attorney. As will be discussed in Pro Se Brief C, Assignment of Error No. 3, the State provided the defense with extensive discovery intended to satisfy its request for a bill of particulars. Thus, counsel did not have a bill of particulars to provide to Defendant.

**ASSIGNMENT OF ERROR NO. 11:**

Defendant claims the State was prohibited from proceeding with the aggravated rape charge after having dismissed the sexual battery charge because the two crimes were based on the same course of conduct. He contends the prosecution for aggravated rape violated his right against double jeopardy. Additionally, Defendant seems to contend that the prosecutor, by dismissing the sexual battery charge, also dismissed the aggravated rape charge because it was "part of the same charge and the

same course of conduct." These claims have no merit.

As discussed previously, Defendant was originally charged with sexual battery under a separate docket number than the aggravated rape and pornography charges. On April 12, 2005, the prosecutor dismissed the sexual battery charge because it involved the same course of conduct as the aggravated rape charge. He stated it was the State's intention not to proceed with that charge, and for that reason, the dismissal was with prejudice. The aggravated rape charge was left intact.

Louisiana Code of Criminal Procedure Article 592 provides:

> When a defendant pleads not guilty and is tried by jury, jeopardy begins when the jury panel is sworn pursuant to Article 790. When a defendant pleads not guilty, and is tried without a jury, jeopardy begins when the first witness is sworn at the trial on the merits. When a defendant pleads guilty, jeopardy begins when a valid sentence is imposed.

Jeopardy never attached in the present case because the sexual battery charge was dismissed months before trial. This claim has no merit.

## ASSIGNMENT OF ERROR NO. 12:

In this assignment, Defendant complains that his co-counsel, Mark Talley, never showed up for court. Mr. Talley was appointed as co-counsel in the case on April 28, 2005. Court minutes show no proceedings took place from April 12, 2005 to November 28, 2005, the day jury selection started. There is no indication in the court minutes that Mr. Talley ever became involved in the case.

The prosecutor informed Mr. Kutch, Defendant's lead counsel, in a letter dated November 8, 2005, that the State was not seeking the death penalty. Additionally, this was confirmed on November 28, 2005, in open court during a hearing on pretrial motions, just prior to the commencement of jury selection. Even in a capital case, an indigent has no statutory right to two attorneys; such an appointment is left to the trial court's discretion. *See State v. Jones*, 97-2593 (La. 3/4/98), 707 So.2d 975. Thus,

Defendant is not entitled to relief on this claim.

## ASSIGNMENT OF ERROR NO. 13:

Defendant claims the district attorney and judge altered various transcripts of hearings on motions, jury selection, and "bench hearings." Attached to Defendant's brief are numerous documents he contends were either "left out" of the record or altered. We have reviewed the record and find the documents that were "left out" either concerned a different proceeding under a different docket number, were submitted to the lower court on the day the record was prepared or thereafter, or were not the type of documents contained in the record (questions posed by Defendant to his attorney, counsel's *voir dire* notes and a newspaper article concerning the proceedings against Defendant). Additionally, there are arrest warrants prepared by Defendant for various officials involved in his case (the district attorney, defense counsel, court reporter, clerk of court) concerning their alleged commission of several criminal offenses. These documents should not appear in the record of this case as they concern other crimes allegedly committed by other individuals.

Additionally, there is a letter sent by Defendant to the clerk of court that does not appear in the record. In the letter, Defendant requests a copy of his bill of particulars and a transcript from an April 12, 2005 proceeding. Another letter Defendant sent to the clerk of court appears in the record, but this one does not. As discussed earlier, the State provided defense counsel with discovery information that it felt would satisfy any motion for a bill of particulars that might be filed. Thus, a bill of particulars would not have been available to provide to the Defendant. Additionally, the April 12, 2005 transcript is contained in the record. There is no indication that this letter was intentionally withheld from the record.

Finally, there is no obvious alteration of the documents that do appear in the

record.  Accordingly, this assignment of error has no merit.

<u>**PRO SE BRIEF B**</u>

## ASSIGNMENT OF ERROR NO. 1:

Defendant claims he was not timely arraigned on the charges of sexual battery and aggravated rape.  He then claims he was denied a lawyer and bond and no 72-hour hearing was held.  Although it is unclear, we assume Defendant is referring to both charges for this claim as well.  The failure to arraign Defendant on the sexual battery charge was previously discussed, and as concerns the aggravated rape charge, Defendant was timely arraigned within thirty days of the filing of the bill of indictment.  La.Code Crim.P. art. 701(C).

Defendant also argues he was not represented by counsel at arraignment.  This allegation is factually incorrect because Defendant was represented by counsel at arraignment.

## ASSIGNMENT OF ERROR NO. 2:

Defendant complains in this assignment of error that his counsel, Mr. Kutch, did not discuss his case with him and refused to answer any of his letters.  As discussed previously, this claim is properly relegated to post-conviction relief proceedings.

Defendant also claims he was forced to keep Mr. Kutch as his attorney because no other attorneys were available to be appointed to his case.  Defendant refers to the exchange he had with the trial judge during his waiver of the right to counsel at the hearing on his motion for post verdict judgment of acquittal.  In that colloquy, the judge explained that Mr. Kutch was the only attorney available that was qualified to represent adults in criminal proceedings.  Defendant, an indigent, did not have the right to the assistance of a particular attorney.  *See State v. Wille*, 595 So.2d 1149

(La.1992), *cert. denied*, 506 U.S. 880, 113 S.Ct. 231 (1992). Thus, this claim has no merit.

Defendant further claims "they" waited until after his mother's death to set his trial because she was the only witness who could testify as to what was found at her house. Defendant has submitted no proof in support of this claim.

**PRO SE BRIEF C**

**ASSIGNMENT OF ERRORS NOS. 1, 2 & 4:**

Defendant claims the district court acted in direct and constructive contempt of court by refusing to turn over a "true correct copy" of the designation of record filed January 23, 2006. Additionally, he contends the lower court altered and tampered with the record that was forwarded in response to this court's order for supplementation of the record. He contends there were things both added and omitted, and that the record was rearranged. Defendant claims this was done to "cover up" criminal actions by the district attorney, judge, defense attorney, investigator, and sheriff's department and to "destroy the truth." As an example, Defendant notes the court minutes dated November 17, 2003, indicate the trial was continued without date because the State was awaiting DNA results. Defendant notes "they" are now claiming this was a joint motion which set a trial date of March 29, 2004, and he questions why the judge would have continued the trial without date if the date had in fact been agreed upon in the joint motion.

Court minutes dated November 17, 2003, show that court opened at 9:30 a.m. and adjourned at 1:00 p.m. The minutes indicate that trial was continued without date. However, at 2:58 p.m. that afternoon, the clerk's office filed a Joint Motion to Continue submitted by the parties, along with an order setting a new trial date. The motion requested a continuance due to the fact DNA reports had not been issued and

other issues still needed to be litigated; a suggested trial date was not mentioned in the motion. The written order continued the trial until March 29, 2004. It appears the joint motion was submitted after the matter was taken up in open court, as there was no mention of the motion in the minutes. Defendant has submitted no proof that the record was altered, thus his claim is denied.

**ASSIGNMENT OF ERROR NO. 3:**

Defendant contends the district court committed perjury in that "they" (presumably, this includes the State) tampered with evidence, withheld evidence on the "motion of discovery, with the bill of particular," filed a "false" 72-hour hearing notice, withheld DNA reports, tampered with the evidence bag, destroyed evidence, coached the witnesses, and conspired with defense counsel about a joint motion to evade the time limitations for bringing Defendant to trial.

Initially, Defendant's claim that the State withheld a bill of particulars has no merit. "The purpose of a bill of particulars is to provide an accused with sufficient information as to the nature and cause of the offense with which he is charged." *State v. Frith*, 436 So.2d 623, 626 (La.App. 3 Cir.), *writ denied*, 440 So.2d 731 (La.1983). The information provided by the State, which was in the nature of "open file discovery," fully apprised Defendant of the nature and cause of the charged offenses. Thus, Defendant is not entitled to relief on this claim. *See State v. Winston*, 97-1183 (La.App. 3 Cir. 12/9/98), 723 So.2d 506, *writ denied*, 99-205 (La. 5/28/99), 743 So.2d 659.

Defendant also claims he was not given a sex offender registration notice in his sexual battery case. As discussed earlier, the sexual battery charge was dismissed, rendering any claims concerning it moot.

The remaining claims raised in this assignment of error were either previously

addressed in Pro Se Brief A, or are unsubstantiated.

## ASSIGNMENT OF ERRORS NOS. 5 & 6:

Defendant contends that jury tampering and jury misconduct occurred during jury selection. Defendant alleges he requested his attorney have several jurors excused and he failed to do so. He further contends if his attorney would have challenged the jurors at issue, the outcome of his trial would have been different.

"Under the standard for ineffective assistance of counsel set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a reviewing court must reverse a conviction if the defendant establishes that counsel's performance was deficient, and he was prejudiced by the deficiency." *State v. Pitre*, 05-405, p. 9 (La.App. 3 Cir. 3/1/06), 924 So.2d 1176, 1183.

Louisiana Code of Criminal Procedure Article 797 provides for the challenge of jurors for cause as follows:

> The state or the defendant may challenge a juror for cause on the ground that:
>
> (1) The juror lacks a qualification required by law;
>
> (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
>
> (3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
>
> (4) The juror will not accept the law as given to him by the court; or
>
> (5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offense.

Defendant alleges that juror Bliss Kendrick was a family member of and friends with the assistant district attorney handling the case, that she cleaned the judge's offices, and a member of her family was a LaSalle Parish court reporter. After a review of the record, there is no evidence Ms. Kendrick's relative was a court reporter for LaSalle Parish. However, Ms. Kendrick did indicate she cleaned a judge's office; however, it was not the office of the judge handling Defendant's case. Additionally, Ms. Kendrick knew and was related, due to her recent marriage, to the assistant district attorney handling Defendant's case.

Louisiana Code of Criminal Procedure Article 797 does not apply to a potential juror's relationship with a judge. Additionally, Ms. Kendrick was not employed by the judge handling Defendant's case. Accordingly, Defendant's attorney was not deficient in failing to challenge Ms. Kendrick for cause on this basis.

> The law in Louisiana is clear that a relationship between a prospective juror and the district attorney does not automatically disqualify the prospective juror from service. *State v. Jones*, 345 So.2d 1157, 1161 (La.1977); *State v. Fairley*, 25,951, p. 3 (La.App. 2 Cir. 5/4/94), 645 So.2d 213, 216, *writ denied*, 94-2909 (La.3/24/95), 651 So.2d 287. The existence of a relationship, even one of blood or marriage, is not sufficient to disqualify a juror unless the facts reveal that the nature of the relationship is such that it is reasonable to conclude it would influence the juror in arriving at a verdict. LSA-C.Cr.P. art. 797. The law does not require that a jury be composed of individuals who are totally unacquainted with the defendant, the person injured by the offense, the district attorney, or defense counsel. It requires that jurors be fair and unbiased. *Fairley*, 25,951 at 3, 645 So.2d at 216. However, a prospective juror's statement that he or she will be fair and impartial is not binding on the trial court. If the revealed details of the relationship are such that bias, prejudice or impartiality may be reasonably inferred, a juror may be properly refused for cause. *State v. Lewis*, 391 So.2d 1156, 1158 (La.1980).

*State v. Juniors*, 03-2425, p. 11 (La. 6/29/05), 915 So.2d 291, 306-07, *cert. denied*, __ U.S. __, 126 S.Ct. 1940 (2006).

Ms. Kendrick testified the family connection with the assistant district attorney handling Defendant's case was "[n]ot real close." She additionally indicated she

would not favor or disfavor the State due to her relationship. There is no evidence relating to the closeness of the relationship at issue, or the extent, if any, of the time spent together. *See State v. Fairley*, 25,951 (La.App. 2 Cir. 5/4/94), 645 So.2d 213, *writs denied*, 94-1940 (La. 11/11/94), 645 So.2d 1152 and 94-2909 (La. 3/24/95), 651 So.2d 287.

Defendant has failed to show that Ms. Kendrick would have been influenced by her relationship to the assistant district attorney handling his case; thus, Defendant's attorney was not deficient in failing to challenge this juror. Therefore, Defendant has failed to meet the *Strickland* test and this argument is without merit. Defendant alleges that Steven Pennington knew witnesses in the matter and that Dr. Turnley was his family doctor. There is no evidence in the record that Dr. Turnley was Mr. Pennington's family physician. However, Mr. Pennington did indicate that he was acquainted with a couple of witnesses in the matter.

> The law does not require that a jury be composed of individuals who are totally unacquainted with a defendant, prosecuting witness, prosecuting attorney, and witnesses who may testify at trial. The law does require that jurors be fair and unbiased. If a relationship between a prospective juror, prosecuting witness, prosecuting attorney, or witnesses, who may testify at trial, and the defendant is such that bias or prejudice may be reasonably implied, a prospective juror may be properly refused for cause. *State v. Fairley*, 645 So.2d 213, *on rehearing*, 94-1940 (La. 11/11/94); 645 So.2d 1152, *writ denied*, 94-2909 (La. 3/24/95); 651 So.2d 287.

*State v. Francis*, 99-208, p. 12 (La.App. 3 Cir. 10/6/99), 748 So.2d 484, 492, *writ denied*, 00-544 (La. 11/13/00), 773 So.2d 156.

Mr. Pennington informed the court that his acquaintance with the witnesses, whom he was asked not to identify, would not affect his ability to serve on the jury. Thus, Defendant has failed to show that Mr. Pennington would have been influenced by his relationship to any witnesses.

Defendant also argued a number of jurors (specifically Joyce Campbell, Tracy

Campbell, Holda Keene, and Reita Pearson) either knew witnesses to be called, attorneys handling the matter, or both. All of the witnesses stated their relationship with either the witnesses or attorneys would not affect their ability to serve on the jury. Defendant has failed to show that these witnesses would have been influenced by their relationship with any witnesses or attorneys. *Id*. Therefore, Defendant's attorney was not deficient in failing to challenge these jurors and Defendant has failed to meet the *Strickland* test.

Defendant argues Michael Ford's wife works with the Jena Police Department. Mr. Ford informed the trial court that his wife was a secretary at the Jena Police Department.

> A juror's association with law enforcement agencies or personnel will not alone disqualify him from service. *State v. Loyd*, 35,637 (La.App. 2 Cir. 2/27/02), 810 So.2d 1214, 1223, *writ denied*, 02-1159 (La.4/21/03), 841 So.2d 779. The fact that a prospective juror is "friends" with, or related to, law enforcement officials or the district attorney is not grounds for automatic exclusion for cause. [*State v.*] *Connolly*, [96-1680 (La.7/1/97),] 700 So.2d [810] at 818.

*Manning*, 885 So.2d at 1078.

Mr. Ford was not asked how his wife's job would affect his service on the jury. However, he indicated he could apply the law and nothing would affect his ability to serve on the jury. Defendant has failed to show that Mr. Ford would have been influenced by his wife's employment at the Jena Police Department; thus, his attorney was not deficient in failing to challenge this juror.

Defendant contends that Daryl Price was employed by the police jury in LaSalle Parish, although the transcript indicated he worked in Harrisonburg, which is in Catahoula Parish. During *voir dire*, Mr. Price indicated he ran a shop for the Highway Department in Harrisonburg. In *State v. McClure*, 258 La. 199, 249 So.2d 109 (1971), the supreme court stated the following regarding an employee of the

Highway Department:

> With regard to the prospective juror, Stewart, we find no error in the trial court's ruling. He was an employee of the Highway Department and stated that he had no personal involvement with any party, witness or court official. Absent personal involvement, we cannot conceive why such an employee would be any more unable to decide a criminal case fairly than a person engaged in similar work in private enterprise. Appellant cites no authority to the contrary, and we have found none.

*Id*. at 113.

Defendant has failed to show that Mr. Price was influenced by his employment with the Highway Department.

Next, Defendant contends that twelve of the fourteen jurors selected were either school teachers, hospital workers, police jury employees, or had spouses working as nurses or policemen. He claims they "fall under . . . the mandatory reporting laws" of La.Ch.Code arts. 603 and 609, and they "have to believe the child." Defendant claims that sixty percent of the names called fell within the class of persons that are required to report child abuse and his attorney refused to challenge them despite being asked by Defendant to do so.

In support of his claim, Defendant cites La.Ch.Code arts. 603 and 609. These articles concern the mandatory reporting laws for child abuse and neglect and the persons that fall within the class of a "mandatory reporter." It is unnecessary to determine whether the jurors named by Defendant fall within the definition of a "mandatory reporter" because their status as such does not mean, as alleged by Defendant, that they were required to believe the victim in this case. Though some persons, by nature of their occupations, are obligated to report child abuse when they have cause to believe it has occurred, this role is separate and distinct from their role as fact finders in a criminal case. Defendant's attorney was not deficient in failing to challenge these jurors on that basis.

Finally, Defendant claims jurors lied about having no knowledge of the case because it had been in the newspaper approximately fifteen times over the course of three and one-half years. Defendant has set forth nothing to substantiate this claim and is not entitled to relief.

## ASSIGNMENT OF ERROR NO. 7:

Defendant claims a court reporter committed obstruction of justice in that she filed a "false transcript." Defendant does not explain which transcript he is referring to nor how it was altered. Thus, he is not entitled to relief on this claim.

Defendant also refers to the omission from the record of matters taken up off the record, specifically, a request for a new lawyer and a request for a change of venue. Obviously, because these matters were taken up off the record, they do not appear in the record. Their omission in no way indicates a fraudulent intent in the preparation of the record.

## ASSIGNMENT OF ERRORS NOS. 8, 9, 10 & 11:

Defendant contends all the actions of the various officials discussed above also constitute injuring public records, filing false records, and malfeasance in office. For the reasons discussed in previous assignments, these claims have no merit.

## MOTION ATTACHED TO PRO SE BRIEF C:

There is a motion attached to pro se brief C in which Defendant asks this court to issue a search warrant to search the offices at the district court to obtain the original tapes if they are not yet destroyed. He claims various officials have rewritten the transcripts and the tapes will show the crimes that these people have committed. As discussed above, Defendant's claims regarding alteration to and omissions from the record do not warrant relief. The "evidence" he provides as proof that alterations occurred does not support his allegations. Other allegations are completely

unsubstantiated. Thus, there is no need to obtain the tapes from the lower court on the showing made by Defendant.

**CORRESPONDENCE RECEIVED APRIL 25, 2006:**

On April 25, 2006, this court received correspondence from Defendant which is extremely difficult to understand. We find the allegations we can understand were either addressed above or do not warrant the granting of relief.

<u>                                        </u>**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent requiring that the sentences be vacated.

The trial court imposed indeterminate sentences by ordering restitution without specifying the amount of restitution and without specifying on which count or counts the restitution was being imposed. At sentencing, the trial court stated the following regarding restitution:

> I'm gonna sentence you in bill number 69,110, to pay all costs of this suit. I'm directing the District Attorney to secure from the Clerk of Court, the Clerk's costs, to secure from the Sheriff the Sheriff's costs and to secure all other statutory fees and costs and to prepare a written judgment which will be filed in the mortgage records of LaSalle Parish. I'm also gonna order you to pay all restitution involved with respect to - if there is any - I order you to pay for any and all medical counseling and health expenses incurred by the victim or her family, as a consequence of your conviction for these offenses. That's also gonna be - it's an indetermined amount, it's just gonna be generally made in the judgment. I don't know what it's gonna be. I don't even know if the State's gonna make an application for that.

After pronouncing the sentences, the trial court concluded by stating:

> And I've already ordered you to pay for any and all medical counseling or other health expenses incurred by the victim or her family as a consequence of your commission of those particular offenses in this case.

In a similar case, this court stated the following regarding the imposition of an

indeterminate amount of restitution:

> As claimed by the defendant in Assignment of Error number 3, he received indeterminate sentences. When the trial court imposed the sentences, it simply ordered "restitution as required by law." The Code of Criminal Procedure provides for the imposition of restitution either as a condition of probation (La.Code Crim.P. arts. 895 and 895.1) or as part of the principal sentence (La.Code Crim.P. art. 883.2). Since the trial court did not place the defendant on probation in the present case, we assume it was ordering restitution pursuant to La.Code Crim.P. art. 883.2. Article 883.2 provides:

>> In all cases in which the court finds an actual pecuniary loss to a victim, or in any case where the court finds that costs have been incurred by the victim in connection with a criminal prosecution, the trial court shall order the defendant to provide restitution to the victim as a part of any sentence that the court shall impose.

> This court has held that when a trial court fails to state the amount of restitution owed as a condition of probation, the sentence is illegal and the case must be remanded for resentencing. *State v. Dauzat*, 590 So.2d 768 (La.App. 3 Cir.1991), *writ denied*, 598 So.2d 355 (La.1992), *cf. State v. Randle*, 02-309, 02-310 (La.App. 3 Cir. 10/2/02), 827 So.2d 657. In *Randle*, this court found the trial court rendered an indeterminate sentence when it failed to set the amount of restitution. Although the record was not clear as to whether the trial court ordered restitution as a condition of probation or pursuant to La.Code Crim.P. art. 883.2, this court found Article 883.2 did not apply since the offense was committed prior to the article's effective date. Although we have not previously addressed the issue of a trial court failing to set the amount of restitution when it is imposed pursuant to La.Code Crim.P. art. 883.2, the same reasoning applies. The failure to state the amount of restitution renders a sentence indeterminate and thus illegal, necessitating that the sentence be vacated and the case remanded for resentencing.

> Because the trial court did not specify on which count or counts the restitution was ordered, *all* sentences must be vacated and the case remanded. The trial court is instructed that if restitution is ordered it must specify on which count or counts the restitution is being imposed as well as the amount of restitution owed. *See State v. Williamson*, 04-1440 (La.App. 3 Cir. 3/2/05), 896 So.2d 302.

*State v. Joseph*, 05-186, pp. 2-3 (La.App. 3 Cir. 11/2/05), 916 So.2d 378, 380.

As in *Joseph*, the trial court in the present case did not specify under what authority it imposed restitution. Because no probation was imposed, we assume the

trial court imposed restitution under La.Code Crim.P. art. 883.2. Additionally, as did the trial court in *Joseph*, the present trial court failed to specify the amount of restitution and failed to specify on which count or counts the restitution was being imposed. Thus, for the reasons stated in *Joseph*, the sentences imposed in the present case should be vacated and the case remanded for resentencing. If restitution is imposed, the trial court must specify the amount of restitution imposed as well as on which count or counts the restitution is imposed.

## DECREE

For the foregoing reasons, we affirm Defendant's conviction for aggravated rape. Finding the language contained in La.R.S. 14:81.1 is ambiguous, Defendant's multiple convictions for possession of pornography is reduced to a single conviction. The case is remanded for resentencing, and the trial court is instructed to specify the amount of restitution imposed as well as on which count or counts the restitution is imposed.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.**